400 P.2d 846

**OLYMPIC LAND CO., Inc., a corporation,**
Appellant,

v.

**James W. SMITHART, Appellee.***

**No. 1 CA–CIV 51.**

Court of Appeals of Arizona.

April 15, 1965.

---

* This appeal was filed with the Arizona Supreme Court and assigned that Court's Number 7827. The matter was referred to this Court pursuant to Section 12–120.23 A.R.S.

Ford Dodd (Deceased), Burton M. Bentley, Phoenix, for appellant.

Gibbons, Kinney & Tipton, by Jack C. Warner, Phoenix, for appellee.

STEVENS, Chief Judge.

James W. Smithart filed his action against Olympic Land Co., Inc., a corporation, and several individuals. Some of the individual defendants were corporate officers and stockholders of Olympic. The individual defendants who were not officially connected with Olympic were successful in their efforts and were eliminated from the action prior to the time that the case was submitted to the jury. No appeal was taken in relation to this success. Four forms of verdict were rendered in favor of the plaintiff. Each verdict was identical in the matter of the damages awarded by the jury, namely a verdict of $9,000 actual damages and $3,125 punitive damages. One verdict was against Olympic; one verdict was against one individual defendant who thereafter took no further action in the trial court nor by the way of appeal; one verdict was against an individual defendant and his wife; and the fourth form of verdict was against another individual defendant. Judgment was duly entered on the verdicts. Olympic and the individuals who were the subject of the last two mentioned verdicts, filed their respective motions for a new trial which motions were denied and they gave their respective notices of appeal. Only Olympic processed the appeal. The court therefore feels that there is no necessity of naming the individual defendants in the body of this opinion.

Smithart urged the he and Olympic entered into an oral agreement for the exchange of real property, that he fully performed and that Olympic did not fulfill its obligations. Smithart urged that under the agreement he was to receive three lots in a new subdivision in a mountain or recreation area of Arizona and that the roads in the subdivision were to be paved or surfaced, that water was to be available to each lot and that electricity was to be available to each lot, all at Olympic's expense. Smithart urged that these portions of the agreement were not complied with by Olympic. Smithart asked for breach of contract, for unjust enrichment and for punitive damages for fraud. The allegations of the complaint were sufficient to sustain a pleading of fraud in relation to future acts to be performed by Olympic.

The trial was hard fought with able counsel representing Smithart and two able attorneys representing the defendants, one representing the corporate defendant and the other the individual defendants. The trial consumed four days. The evidence and the legal arguments during the progress of the trial required 607 pages of the reporter's transcript. The settling of the instructions, the argument of the case to the jury and the court's instructions, required an additional 164 pages. In order to have a clear picture of this case, the 607 pages as well as the instructions have been read by the court, even though no error is assigned in relation to the instructions.

There was testimony of an oral agreement between Smithart and Olympic. The oral agreement was reached in the late summer or early fall of 1958. Pursuant to that agreement and on October 8, 1958, Smithart deeded his equity in a home in Phoenix to Olympic and not long thereafter Olympic sold or transferred the home to a third party. Some time later Olympic tendered a contract of exchange to Smithart who refused to sign it because it was silent as to Olympic's obligation in relation to roads, water and electricity. Smithart transmitted these reasons to Olympic. The evidence does not disclose an affirmative denial of these obligations by Olympic. Still later, Smithart was tendered escrow instructions in relation to the transfer of the three lots which he was to receive. The

escrow instructions were likewise silent relative to roads, water and electricity and for that reason Smithart again refused to sign. Again he so informed Olympic. Again there was no evidence as to Olympic denying the existence of this obligation. No deed to the three lots was executed by Olympic and Smithart did not take possession of the three lots.

■ A corporate officer on cross examination identified an exchange contract (Exhibit 24) between Olympic and McDonald. This written document bearing the signatures of the parties thereto was silent as to roads, water or electricity. The contract, as written, was fully executed in that McDonald promptly transferred to Olympic all that he was obligated to transfer and Olympic promptly conveyed title to the required lots to McDonald. The plaintiff then called McDonald as a witness and over objection established that McDonald's arrangement with Olympic was negotiated at a time reasonably near to the time of Smithart's negotiations. McDonald further testified that he too had received like promises relative to roads, water and electricity. Olympic assigns as error the ruling of the court in allowing the McDonald testimony. McDonald was not a party to the suit then being tried. His testimony had no bearing upon any claim he might have relative to his rights under the contract which he had with Olympic. The purpose of the testimony was to show plan, scheme, design and knowledge on the part of Olympic. This aspect of the testimony was received in relation to Smithart's claim for punitive damages. The United States Court of Appeals for the 9th Circuit in deciding an appeal from a judgment rendered by the United States District Court Judge sitting in Arizona, had before it a somewhat similar question. In the case of Baldwin v. Warwick, 9 Cir., 213 F.2d 485 (1954), that court approved the receipt of the testimony of two witnesses who testified to drugged drink experiences similar to the experience testified to by the plaintiff in that action. In

relation to the testimony of these witnesses, the court stated that:

"Their testimony would appear to have been properly admitted for the limited purpose of showing the existence of an overall scheme."

We find an absence of error in relation to this phase of the case.

During Smithart's vacation in the spring of 1959, he accepted employment with Olympic to grade the roadways in the subdivision. He was to receive additional lots as compensation for these services. Smithart undertook to perform these services during the month of April 1959 and in the performance thereof was present in the subdivision at the time that Olympic staged a promotional bar-b-que. Smithart agreed to cook for the bar-b-que. He testified that at the bar-b-que he was given a promotional brochure (Exhibit 9) and that he secured a copy of an undated, unsigned paper entitled "Instructions to Salesmen" (Exhibit 10). The evidence in relation to the foundation for Olympic's responsibility in connection with Exhibit 10 was such that this court does not disagree with the ruling of the trial court in sustaining objections to the receipt of Exhibit 10 into evidence.

As to Exhibit 9, Smithart testified that not only was he given a copy of the exhibit at the bar-b-que but that copies were given to those who attended the bar-b-que and that there was a supply of the brochures available for distribution at the bar-b-que. There was also testimony that a sizeable supply of the brochures was available at the Phoenix Sales Office for Olympic. Exhibit 9 had been prepared by an advertising agency. Shortly after its preparation an employee of the agency was employed by Olympic as a "manager". It may be well to state at this point that Exhibit 9 contains a rough sketch map of the subdivision in question showing the lot numbers and the street names. In part, the following further appears in the Exhibit:

"For further information, write or call: * * *" and reference is then made to

the Olympic Land Development Company and the address.

The brochure further states: "Low-cost electricity is yours for the asking. Deep well pumps will provide you with the purest of water, with pressures equalized to each lot. * * * Main roads are paved. Secondary roads and entrances are composition topped."

The plaintiff offered Exhibit 9 in evidence and the objection thereto was sustained, one of the grounds of the objection being remoteness in time and another being lack of sufficient foundation as to Olympic's responsibility in connection with its preparation.

One of the individual defendants who was an officer and stockholder of Olympic was called for cross examination and plaintiff's counsel made a further effort to lay a foundation for the introduction of Exhibit 9 into evidence. From the nature of the objection which was made we assume that plaintiff's attorney was looking at Exhibit 9 while framing his questions and that the jury could observe the manner of the use of the exhibit in the framing of the questions. Thereupon there was a conference in the absence of the jury and the reporter's transcript reflects that the following took place in the conference:

"THE COURT: The jury has seen the paper in your hand and knows it's exactly the same thing that you're reading, you are giving it to the jury without its being in evidence.

"MR. WARNER: I will sure try not to.

"THE COURT: Don't look at the document, just go ahead and ask him generally."

\* \* \* \* \* \*

"THE COURT: Better go somewhere and make notations because the jury can see you do that, they can see it and I can see it."

\* \* \* \* \* \*

"MR. WARNER: Your Honor, I wish if there is any impropriety at all, and I dispute some of the things counsel has just said, I would ask the Court to give a cautionary instruction to the jury.

"THE COURT: The only thing to do is not to look at it, try to memorize it."

\* \* \* \* \* \*

"MR. WARNER: I need it to refresh my memory as to some of the things.

"THE COURT: The minute you do it they know what you're doing.

"MR. WARNER: All right, your Honor, the questions are over and everything is asked and whatever the Court or counsel would wish to be done regarding any recitification of any possible error—

"THE COURT: The thing is don't do it any more, you will have to put that paper down and not look at it."

Exhibits 9 and 10 were reoffered and the objections thereto were sustained. The trial court did not give the jury any cautionary instructions relative to the use of the exhibits.

The defendants moved for a mistrial urging misconduct on the part of plaintiff's counsel in the manner of the use of the exhibits urging that the jury could conclude that the defendants were attempting to withhold that which should be received into evidence. The motions were denied. There was a later similar motion which was not ruled upon.

During the presentation of the evidence on behalf of the defendants one of the individual defendants was called as a witness. He was a corporate officer and stockholder. He had several business enterprises all of which were located in one building and the main office of Olympic was in the same building. He was questioned with reference to Exhibit 9 and in part his testimony is as follows:

"Q. And with reference to Exhibit No. 9 for identification you have seen that on prior occasions, have you not?

"A. Yes, sir.

"Q. And that was proposed while you were an officer of the corporation, was it not?

"A. Yes.

"Q. And that was disseminated to prospective purchasers of the lots at the bar-b-que, was it not?

"A. It was.

\* \* \* \* \* \*

"Q. I don't think—I mean you don't think that it was being passed out for promotion purposes?

"A. I am pretty sure it wasn't

"Q. Do you think it was being passed out to any other salesmen?

"A. I didn't attend any.

"Q. It's been discussed at the corporate board meetings, was it not?

"A. Yes.

"Q. You knew it was being used in the promotion of lot sales?

"A. I don't believe it was used during the time I was with the corporation.

"Q. How many copies of that do you think were prepared, if you know?

"A. I am sorry, I don't know.

"Q. Big stacks of them?

"A. Well, there are some boxes of them.

"Q. And those were stored at 777 East Glendale, were they not?

"A. Yes.

"Q. And you know, as a matter of fact, that at least some people were given those instruments by salesmen of the lots?

"A. It is possible.

"Q. Well, you have seen it, haven't you?

"A. I have seen the material, yes, but I could not show you that prospective purchasers got them or not.

\* \* \* \* \* \*

"MR. WARNER: Q. And it is true that you as broker at 777 East Glendale made those available to the salesmen under you, is it not?

\* \* \* \* \* \*

"THE WITNESS: It is possible."

Exhibit 9 was reoffered, an objection was made and the objection was then sustained.

On the appeal Olympic urges that it was error to not grant the motions for mistrial and further urges that the conduct of plaintiff's counsel was prejudicial.

Smithart filed a cross assignment of error in relation to the court's ruling in sustaining the objections to Exhibits 9 and 10. A cross assignment of error may be considered only in support of the judgment. Kahl v. Winfrey, 81 Ariz. 199, 303 P.2d 526 (1956). It is the use of Exhibit 9 rather than Exhibit 10 which is the basis of Olympic's appeal.

A trial court is vested with certain discretion in determining the issue of claimed misconduct of counsel and in relation to whether or not a jury is to be admonished. Higgins v. Arizona Savings and Loan Association, 90 Ariz. 55, 365 P.2d 476 (1961); Selaster v. Simmons, 39 Ariz. 432, 7 P.2d 258 (1932). Generally speaking, after the trial court has ruled, the attorney should refrain from pursuing a particular line of questioning as his remedy lies in appeal. There is no misconduct where the attorney proceeds in good faith and in the conscientious belief of the correctness of his position. Buehman v. Smelker, 50 Ariz. 18, 68 P.2d 946 (1937). An appellate court will defer to the judgment of the trial court unless the conduct is clearly prejudicial. Selaster.

We are of the opinion that a proper foundation for the use of Exhibit 9 was presented to the trial court. This Exhibit showed a continued course of conduct and a continued course of representations corroborative of the plaintiff's position even though subsequent to plaintiff's contract and generally remote in point of time. The exhibit was admissable and the value to be attached thereto rested with the jury. Where this is true, it is not reversible error for the attorney to attempt to convince the trial court even in the face of an adverse ruling. Posner v. New York Life Insurance Company, 56 Ariz. 202, 106 P.2d 488 (1940). While this court does not encourage the taking of this risk, we find no misconduct on the part of plain-

tiff's attorney. We find no error in the denial of the motions for mistrial.

 Olympic urges that the evidence does not support the award of actual damages and that the evidence does not support the award of punitive damages. The trial court disagreed with these contentions when he denied the motions for new trial and after a review of the record, we agree with the trial court in this connection.

The judgment of the trial court is affirmed.

CAMERON and DONOFRIO, JJ., concurring.