Stephen M. CREAMER and Spud M. Burns, Plaintiffs,

v.

GENERAL TEAMSTERS LOCAL UNION 326, Universal Coordinators, Inc., a New Jersey corporation, Inland Container Corporation, a Delaware corporation, Defendants.

Civ. A. No. 81–515.

United States District Court, D. Delaware.

March 23, 1983.

Kenneth M. Roseman, D'Angelo, Ciconte & Roseman, Wilmington, Del., for plaintiffs.

Thomas L. Little, Wilmington, Del., for defendant Local 326.

Peter J. Walsh, Murdoch & Walsh, Wilmington, Del., Robert F. Stewart, Jr., Obermayer, Rebman, Maxwell & Hippel, Philadelphia, Pa., for defendant Universal.

Edward P. Welch, Skadden, Arps, Slate, Meagher & Flom, Wilmington, Del., Edward O. DeLaney, David L. Swider, Barnes & Thornburg, Indianapolis, Ind., for defendant Inland.

## OPINION

STAPLETON, District Judge.

This action arises out of the termination of employment of plaintiffs Stephen M. Creamer and Spud M. Burns. Plaintiffs were employed by Universal Coordinators, Inc. ("Universal"), a labor-leasing company, and at the time of termination, their services were being leased to Inland Container Corp. ("Inland"). The General Teamsters Local Union 326 ("Teamsters") and Universal were parties to a collective bargaining agreement which governed the terms and conditions of employment of the plaintiffs. The case is currently before me on Inland's motion to dismiss for the reason that the action is barred by the applicable statutes of limitations,[1] and on plaintiffs' motion in limine.

Prior to July 1, 1977, plaintiffs were employed as truck drivers by Universal. Universal, a stevedoring company owned by Eugene Boffa, was in the business of providing services to the trucking divisions of various companies. Inland, a corrugated paper board manufacturer, was one such customer of Universal and Universal provided Inland with several truck drivers, including the plaintiffs, who assisted Inland in its shipping operation at its Newark, Delaware plant.

On April 1, 1976, the Teamsters and Universal entered into the 1976 collective bargaining agreement which governed the terms and conditions of employment of the plaintiffs, as well as the other drivers performing services for Inland. This collective bargaining agreement contained provisions regarding certain obligations in the event an "operation" of Universal was taken over by another employer. It also established a procedure for the resolution of grievances and questions of interpretations arising under the agreement.

Because of problems with labor unrest at its Newark, Delaware plant, Inland no longer desired to use certain of Universal's truck drivers, including the plaintiffs. On July 1, 1977, Universal's operation at Inland was transferred to a third party and because of the transfer of operations, plaintiffs' jobs were eliminated. The transferee, Preferred Personnel, Inc. ("Preferred"), was a firm also owned by Eugene Boffa. Plaintiffs were not aware of the common ownership of Universal and Preferred and,

---

1. The parties agree that because supplemental materials have been filed the motion is to be treated as one for summary judgment. Fed.R. Civ.P. 12(b)(6).

accordingly, did not exercise certain rights under the collective bargaining agreement guaranteed them under such circumstances.

The current action was filed on November 23, 1981. Plaintiffs claim that Universal, Inland, and the Teamsters have conspired to deprive them of their contractual rights under the collective bargaining agreement in connection with their terminations in violation of both state and federal law.

## I. STATUTE OF LIMITATIONS

Although the parties are in dispute as to the limitations periods applicable to the claims, I need not resolve that dispute, however, because I find that there is a dispute of fact as to whether the applicable periods were tolled by Inland's fraudulent concealment. There is no dispute that, even under the shortest possible limitations period, the claims are not barred if there was fraudulent concealment.

■ Under both state and federal law, the limitations period is tolled where a defendant's fraudulent concealment of its wrongful acts prevents the plaintiff from discovering his or her rights. The statute is tolled, however, only until the plaintiff actually discovers or, in the exercise of reasonable diligence, could have discovered those rights. *Giordano v. Czerwinski,* 216 A.2d 874, 876 (Del.Supr.1966); *Tobacco and Allied Stocks v. Transamerica Corp.,* 143 F.Supp. 323, 329 (D.Del.1956), *aff'd,* 244 F.2d 902 (3d Cir.1957). In this case, plaintiffs contend that Inland participated in a conspiracy to deprive plaintiffs of their contractual rights. They further contend that Inland and the other defendants fraudulently concealed that conspiracy from plaintiffs and, in particular, as part of that concealment, they represented Universal and Preferred to be unrelated corporations.

■ In support of its position, plaintiffs have presented evidence in the form of two internal Inland memoranda which support an inference that Inland knew of a connection between Universal and Preferred. In one dated March 8, 1977, Inland's general traffic manager, Kendall, stated that:

Essentially, Boffa outlined the proposition he had indicated on the phone, that is, allow him to have another company offer us this service and then have Universal Coordinators send a thirty-day cancellation notice to Inland. During the thirty-day notice, the new company would hire all new drivers. The new drivers would be subject to our approval. They would not have to be present members of the Local 326, but would have to join when the new operations started. All present drivers would receive a notice from Universal that their business with the Inland account has been cancelled and therefore, Universal will no longer have work for them.

After exploring other plans to solve the Newark truck driver problem, he concluded by recommending use of the aforementioned "Boffa plan." In the second memorandum, dated March 22, 1977, Kendall's superior, Harrison, pushed for the development of a timetable:

Please develop for me a tentative timetable for completing the job of replacing all the Newark drivers. Show the following milestones with dates plus any others you feel appropriate:

1. Receipt of 30-day cancellation to Inland by Universal Coordinators.

2. Receipt of proposal by Boffa to provide driver service through another company.

3. Interviewing/hiring of new drivers and dispatcher.

4. Notice to present drivers of cancellation of services.

5. Introduction of new drivers (gradual or all at once?)

6. Completion of project.

Together these memoranda permit an inference that Inland had considered, and then in fact adopted, a plan whereby Boffa would continue to provide driver service to Inland but through a company other than Universal.

Plaintiffs have also presented evidence indicating that Inland took affirmative steps to conceal the relationship between

Universal and Preferred. In particular, there is evidence that Inland informed a Senior Examiner of the National Labor Relations Board, during an investigation, that there was no relationship between Universal and Preferred.[2]

Inland suggests that, even if there was fraudulent concealment, *arguendo,* the statute was not tolled because plaintiffs were aware of rumors that a connection existed between Universal and Preferred and were thereby given sufficient notice to require that they investigate the matter with diligence. Since a reasonable investigation, according to Inland, would have discovered the connection in the summer of 1977, the November 1981 complaint in this action was time barred. *Giordano; Tobacco and Allied Stocks, supra.* I am unable to reach such a conclusion at this stage, however, given that the NLRB itself conducted an investigation at the time and did not uncover the true relationship. Further, reasonable diligence does not require, as defendants suggest, that plaintiffs file suit based on rumors or suspicions in hopes that the discovery process will yield affirmative results.

## II. MOTION IN LIMINE

Plaintiffs seek to have admitted into evidence certain testimony of Robert Rispo and Charles Allen, two government witnesses, given at the criminal trials of Eugene Boffa and Francis Sheeran, the president of Teamsters Local 326. Plaintiffs offer the testimony for the purpose of showing that Universal made direct cash payments to the Teamsters in order to induce the Teamsters to breach the fiduciary duty it owed its members. Universal objects to this evidence as inadmissible hearsay. Plaintiffs contend that these witnesses are unavailable and, on the basis of *In re Screws Antitrust Litigation,* 526 F.Supp. 1316 (D.Mass.1981), that the testimony is

admissible as an exception to the hearsay rule under Rule 804(b)(5) of the Federal Rules of Evidence.

Rule 804 allows a statement of an unavailable witness to be admitted if the statement falls under one of the enumerated exceptions in Rule 804(b)(1)–(4) or if it falls under the "residual" hearsay exception of Rule 804(b)(5). A statement satisfies Rule 804(b)(5) if it is:

A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

■ Plaintiffs' argument that the former testimony falls under Rule 804(b)(5) raises a "near-miss" problem because Rule 804(b)(1) is a specific hearsay exception applicable to former testimony. I agree with Judge Becker's analysis in *Zenith Radio Corp. v. Matsushita Elec. Ind. Co.,* 505 F.Supp. 1190, 1263–64 (E.D.Pa.1980), that where there is a specific hearsay exception applicable to a clearly defined category of evidence such as former testimony, but the evidence fails to satisfy the requirements of the specific exception, the evidence should not be admitted under the residual exception. Thus, if the former testimony is admissible, it must be under Rule 804(b)(1) and not Rule 804(b)(5).

■ In order for testimony to be admissible under Rule 804(b)(1),[3] a "predecessor in interest" to the party against whom the

2. Docket Item No. 84.

3. The text of Rule 804(b)(1) provides:

FORMER TESTIMONY. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same

or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

testimony is now offered, i.e., Universal,[4] must have had an "opportunity and similar motive" in the former proceeding to develop the testimony by cross-examination. Thus, the rule requires an examination of the nature of the prior proceedings. In the prior proceedings, the operative facts alleged here were also charged against Boffa and Sheeran, i.e., their participation in a scheme to switch labor-leasing companies at Inland's Newark plant while covering up this scheme. Their trials were severed, however, because their defenses were viewed as inconsistent.

With respect to testimony from the Boffa trial, it is clear that Boffa, as owner of Universal, was Universal's predecessor in interest. Because the same conduct charged here was also the basis of charges made in Boffa's indictment and subjected him to criminal liability, he had an opportunity and similar motive to cross-examine Allen and Rispo. Thus, the testimony of Allen and Rispo from the Boffa trial is admissible here against Universal under Rule 804(b)(1) if plaintiffs demonstrate that they are unavailable as witnesses under Rule 804(a)(5).

With respect to testimony from the Sheeran trial, however, although Sheeran was an alleged co-conspirator of Boffa's, because Sheeran's defense was inconsistent with Boffa, Sheeran did not share the same motive in cross-examination as Universal and, accordingly, was not its predecessor in interest. *See, Zenith* at 1292. The testimony from the Sheeran trial is, therefore, not admissible against Universal.

■ Plaintiffs maintain that the witnesses are unavailable as defined in Rule 804(a)(5).[5] To satisfy Rule 804(a)(5), the plaintiffs must show that they have been "unable to procure [the witnesses'] attendance ... by process or other reasonable means." In support of the contention that Allen and Rispo are unavailable, plaintiffs' counsel has submitted his affidavit in which he avers that in an effort to learn the present addresses of Allen and Rispo, he has (a) checked the telephone directory of their last known city of residence (Philadelphia), (b) reviewed transcripts and court files of other proceedings in which they have been involved, (c) contacted investigators from the United States Department of Labor, (d) contacted attorneys employed by the United States Department of Justice, and (e) contacted Rispo's local attorney. These efforts have not been successful.

With respect to Rispo, these efforts on the part of counsel demonstrate that he has made a diligent search to locate the witness. Since he has been unable to locate Rispo, he cannot procure his attendance by process or otherwise.

■ With respect to Allen, however, Universal has suggested that Allen is under the government's witness protection program and that plaintiffs, although unable to subpoena Allen, might be able to procure his voluntary attendance by attempting to contact him through the United States Marshal's Office. Plaintiffs contend that the proponent under Rule 804 need not show an inability to procure an absent witness' "voluntary" attendance at trial, but only that he has been unable to subpoena the witness. If the words "or other reasonable means" are to have any meaning at all, however, it is clear that they must be interpreted as meaning something other than by process. Certainly one reasonable means is by a request to the witness for voluntary attendance, at least where such a request has a reasonable likelihood of success.[6] *See,* Lou-

4. Inland and the Teamsters do not object to the admission of evidence.

5. The text of Rule 804(a)(5) is as follows:
   (a) *Definition of unavailability.* "Unavailability as a witness" includes situations in which the declarant—
   (5) is absent from the hearing and the proponent of his statement has been unable to procure his attendance (or in the case of a hearsay exception under subdivision (b)(2), (3), or (4), his attendance or testimony) by process or other reasonable means.

6. In *Zenith* and the cases cited therein at 1249, the unavailable witness was either overseas or had refused to appear voluntarily. Where the witness is not in this country, it can reasonably be inferred that a request for voluntary appearance would be unavailing. The current record

500

isell and Mueller, *Federal Evidence,* Vol. 4 § 486, pp. 1055–56 (1980). Accordingly, before the former testimony of Allen will be admissible in this trial, plaintiffs must attempt to secure Allen's voluntary attendance at trial if they can find a means of doing so.

in this case will not support such an inference with respect to Allen.

I decline to follow the across-the-board rule apparently adopted by the Court of Appeals for the Ninth Circuit in *Murray v. Toyota Motor Distributors, Inc.,* 664 F.2d 1377, 1380 (9 Cir. 1982) which equates "by process or other reasonable means" with "by process."