723 P.2d 696

**MISTER DONUT OF AMERICA, INC.,**
a Delaware corporation, Plaintiff
Counter-defendant-Appellant,

v.

**Dean HARRIS and Jane Doe Harris, his
wife; and Jack Lane and Jane Doe
Lane, his wife, Defendants Counter-
claimants-Appellees.**

No. 1 CA–CIV 7020.

Court of Appeals of Arizona,
Division 1, Department D.

Nov. 14, 1985.

Lewis and Roca by Peter D. Baird, Edward M. Lewis and Patricia Norris Halstead, Phoenix, for plaintiff counter-defendant-appellant.

Toci, Murphy & Beck by Philip E. Toci, Prescott, for defendants counter-claimants-appellees.

OPINION

HAIRE, Judge.

This appeal is from the denial of plaintiff's motion for new trial and from a judgment awarding damages to the defendants on their counterclaim. The action arises out of a franchise agreement pursuant to which the defendants, Dean Harris, Jack Lane and their wives owned and operated a Mister Donut shop in Prescott, Arizona. After some five years of operation under the agreement, Mister Donut sued the defendants (hereinafter Harris) to collect unpaid franchise fees and to enforce a covenant not to compete. Harris denied that the covenant was enforceable and counterclaimed for breach of contract and fraud in its inducement. The jury ruled in favor of Harris on both the contract and fraud claims, but, following instructions, awarded damages on the fraud claim only.

In reviewing this judgment entered on a jury verdict, we must view the evidence in the light most favorable to the defendants as the prevailing party, and must give them the benefit of all reasonable inferences arising from the evidence. *McFarlin v. Hall*, 127 Ariz. 220, 619 P.2d 729 (1980); *Hallmark v. Allied Products Corp.*, 132 Ariz. 434, 646 P.2d 319 (App.1982).

The defendants are Prescott residents who own or operate several businesses in that area. Mister Donut is a franchiser of Mister Donut Shops. These shops sell donuts, coffee and related food products and utilize certain trademarks, recipes and formulas developed by Mister Donut. Mister Donut is a wholly-owned subsidiary of International Multifoods. The two corporations are housed in the same building and there is a significant degree of communication and interrelation at the management level between the two.

In 1973, International Multifoods sold a flour mix plant to DCA Industries and as part of the agreement International Multifoods was prohibited from selling its baking mix products in Arizona until November 1980. Mister Donut proceeded to sell

franchises in Arizona, however, emphasizing the unique quality of its product. It attributed this uniqueness to its use of International Multifoods mixes, despite its knowledge that Arizona franchisees would be unable to obtain International Multifoods products from sources within the state prior to November 1980.

The defendants' interest in a Mister Donut franchise began when Mr. Harris saw an advertisement in a national trade magazine. Upon contacting the company, he was sent a brochure which claimed that the kinds of donuts the company produced could not be purchased in a supermarket or other bakery. The donuts were produced from unique recipes owned by Mister Donut and were made only from the finest products. The brochure stated that the perfection of the donuts was maintained through a stringent system of quality control, and because the donuts tasted better, more were sold.

Russell Johnson, a Mister Donut franchise salesman, met with Harris in Prescott in November 1976. He emphasized the fact that Mister Donut was owned by International Multifoods, which manufactured its unique donut mixes specifically for Mister Donut. He said that the resulting product's superior taste and the wide variety of donuts that could be made with International Multifoods mixes would distinguish a Mister Donut shop from the other bakeries in Prescott. Based upon Johnson's representations, Harris understood that Mister Donut was expanding into Phoenix and Tucson, and thus that International Multifoods would be establishing a distributor in Arizona from which Harris could obtain International Multifoods products when he opened his store.

Harris was told by his district manager in late September 1977, just prior to opening his store, that there were no International Multifood distributors in Arizona and that he could obtain supplies from a company in St. Louis, Missouri. He would have to have them shipped by common carrier or meet the distributor's supply truck in Albuquerque. Harris testified that the district manager did not inform him of the restrictive agreement between International Multifoods and DCA. Instead, Harris was assured that the supply problem was temporary. Over the next three years, Harris was continually assured that Mister Donut was doing everything it could to remedy the supply problems and to set up an International Multifoods distributorship in Arizona.

In April 1980, Harris went to a regional sales meeting in Chicago. He testified that at that meeting he learned for the first time of the restrictive covenant which precluded the establishment of an International Multifoods distributorship in Arizona prior to November 1980. The flour mixes Harris had been able to obtain during the interim were not manufactured by International Multifoods and produced unreliable results. Mister Donut provided no instruction or training in their use, and Harris was forced to experiment, resulting in excessive waste. In addition, the mixes he was able to obtain were the same mixes used by the other bakers in Prescott, so Harris' products were not the unique donuts promised by Mister Donut. After some five years of making donuts, only eleven or twelve months of which proved profitable, he ceased operation in March 1982 and leased the building and equipment to a third party.

Thereafter, Mister Donut commenced this action against Harris for unpaid franchise fees and to enforce a covenant not to compete. As previously stated, the jury found for Harris on his counterclaim for breach of contract and common law fraud. On the fraud claim, compensatory damages of $54,618 and punitive damages of $750,-000 were assessed against Mister Donut. The jury also returned a verdict in favor of Harris on Mister Donut's complaint for unpaid franchise fees.

Mister Donut raises several issues on appeal. It argues that Harris' fraud claim was barred by the statute of limitations, that the trial court erred in refusing to force Harris to elect between his contract and fraud claims before sending the case to

the jury, that the court erred in admitting testimony by one witness and portions of the deposition of another, and challenges both the amount and award of punitive damages.

Harris contends that Mister Donut waived the right to object to the jury's decision on the statute of limitations because of its failure to move for a directed verdict at the close of evidence. While Harris' contention might be correct under federal law, the Arizona Rules of Civil Procedure do not require such a motion. *Singleton v. Valianos,* 84 Ariz. 51, 323 P.2d 697 (1958). Mister Donut properly preserved the issue by filing its alternative motion for new trial. Accordingly, we consider first the statute of limitations issue.

Both parties agree that the applicable statute of limitations is the three-year period provided by A.R.S. § 12–543. Pursuant to that statute, the cause of action accrues when the injured party discovers the facts constituting the fraud. The party need not be aware of all the facts relating to the claim, but only of facts which would cause a prudent person to investigate and discover the fraud. *Condos v. Felder,* 92 Ariz. 366, 377 P.2d 305 (1962); *Guerin v. American Smelting & Refining Co.,* 28 Ariz. 160, 236 P. 684 (1925); *Richards v. Powercraft Homes, Inc.,* 139 Ariz. 264, 678 P.2d 449 (App.1983).

Mister Donut contends that the claim accrued shortly after the franchise opened in October 1977, when Harris admittedly discovered that there were no Arizona distributors of International Multifoods products. Accordingly, Mister Donut argues that the statutory period expired in the fall of 1980 or spring of 1981, well before Harris filed the counterclaim in March 1982, and thus that the jury's verdict was contrary to the evidence.

Harris responds that Mister Donut misrepresented that International Multifoods products would be made available shortly, knowing that the restrictive covenant made this legally impossible. He argues that he did not have knowledge of the facts constituting the fraud until he discovered the existence of the covenant in 1980. We cannot agree.

■ In a case involving promissory fraud, such as this one, the intent not to perform must be present at the time the promise is made. *See Employer's Liability Assurance Corp. v. Lunt,* 82 Ariz. 320, 313 P.2d 393 (1957); *Berry v. Robotka,* 9 Ariz.App. 461, 453 P.2d 972 (1969). Notwithstanding Harris' admitted early knowledge of the falsity of the representations which were made by Mister Donut, Harris contends that his cause of action did not accrue for statute of limitations purposes until he received knowledge in 1980 of the existence of the DCA covenant not to compete. He has not cited any authority, however, supporting this contention. In our opinion promissory fraud falls within the general rule that knowledge of sufficient facts to warrant a diligent investigation of the situation triggers the running of the statute of limitations.

■ Within a few months after opening the donut shop, Harris had knowledge of the falsity of the representations made by Mister Donut. He knew at that time that there was no Arizona distributor of International Multifoods products. There were no profits of $4,000 to $6,000 per week as predicted; the shop operated at a loss from the beginning. The approved mixes which Harris used as substitutes were not unique, they were being used by several other bakeries in Prescott. Early on, therefore, Harris had discovered enough inconsistencies and falsities that it was incumbent upon him to make a full investigation of the situation in order to protect himself if he felt that he had been wronged. We find that Harris' cause of action for fraud accrued, as a matter of law, by early 1978 and therefore that the jury finding that it accrued after March 1979 was contrary to the evidence.

■ In arriving at the above conclusion, we emphasize that the sole issue presented to the jury concerning the statute of limitations related to when the cause of action accrued. The jury was not instructed con-

cerning the possible tolling of the limitations period after the accrual of the cause of action. Tolling simply was not put in issue. In fact, in his answering brief, Harris disavows any contention that he relies on any alleged subsequent "concealment" or "ongoing fraud" by representatives of Mister Donut for the purpose of tolling the statute, stating:

> "The issue which was clearly presented to the jury by virtue of the court's instructions was not one of 'tolling the statute of limitations' or 'extending the statute of limitations' through continuing fraud or concealment, as argued by the plaintiff, but the fundamental question of the date upon which the cause of action accrued and the statute of limitations commenced to run."

Therefore, even if the evidence would have justified a finding that Mister Donut's continued efforts and assurances concerning the establishment of an Arizona International Multifoods distributorship were "directed to obtaining the delay of which [Mister Donut] actively seeks to take advantage by pleading the statute," *see Jackson v. American Credit Bureau, Inc.*, 23 Ariz. App. 199, 531 P.2d 932 (1975), there could have been no finding of tolling in this case.

We conclude that the trial court erred in refusing to grant Mister Donut's motion for new trial on the fraud issue. We therefore reverse the judgment in favor of Harris on the fraud claim, including both compensatory and punitive damages.

We will now consider other issues raised on appeal which will be pertinent in any retrial of this matter. Because the jury was instructed that damages could not be awarded on both the fraud and contract claims, even though the jury found in Harris' favor on the contract claim, it awarded no damages on that claim. On appeal Mister Donut has not attacked the sufficiency of the evidence to support the jury's finding in Harris' favor on the contract claim, but it does urge that the trial court committed reversible error by permitting Harris to submit both the breach of contract and fraud claims to the jury. It asserts that

Harris was required to elect between the two remedies and that by proceeding to the jury on the contract claim Harris affirmed the contract and lost the right to sue for fraud.

■ Harris contends that Mister Donut waived the right to raise the election of remedies issue by expressly waiving any objections to the court's jury instructions. We disagree. Mister Donut made its position clear in a trial memorandum on the issue. The judge did not rule on Mister Donut's motion to force an election until after the jury had been instructed and had retired, and when he did so it was in the context of permitting counsel to make a record on instructions which they had offered but which the court had not used. We find that Mister Donut's waiver of objections to the court's instructions did not extend to the court's failure to require an election.

■ On the merits of the issue, Harris contends that the election of remedies doctrine was not applicable in this case because the court's instructions to the jury achieved the purpose of the doctrine by preventing double recovery. The election of remedies doctrine requires an aggrieved party to choose between one or more available but inconsistent remedies and bars recourse to the others. *Hennesy Equipment Sales Co. v. Valley National Bank*, 25 Ariz.App. 285, 543 P.2d 123 (1975). The purpose for the rule is to prevent double recovery. *Fousel v. Ted Walker Mobile Homes, Inc.*, 124 Ariz. 126, 602 P.2d 507 (App.1979). Thus, it prevents a party from repudiating a contract and then suing on it for the benefit of the bargain. *Id.* We view the doctrine in conjunction with Rule 8(f)(2) of the Arizona Rules of Civil Procedure which permits the pleading of inconsistent theories. The purpose of the rule is to allow a plaintiff to take advantage of every possible development in the evidence which would entitle him to recovery "and thus prevent his being forced to elect in advance and at his peril which theory he will proceed upon." *Edward Greenband*

*Enterprises of Arizona v. Pepper,* 112 Ariz. 115, 117, 538 P.2d 389, 391 (1975).

In the case before us, forcing Harris to elect between his fraud and contract claims even at the conclusion of the trial would have placed him in peril of losing all recovery since the question of whether the fraud claim was barred by the statute of limitations had to be answered by the jury. If he had elected to proceed on the fraud claim alone, he would have sacrificed the possibility of recovery under the contract claim with its longer limitations period. Nevertheless, Mister Donut argues that two Arizona cases mandate an election: *Edward Greenband Enterprises of Arizona v. Pepper, supra,* and *Sun Lodge, Inc. v. Ramada Development Co.,* 124 Ariz. 540, 606 P.2d 30 (App.1979).

In *Greenband,* the plaintiff sued for both breach of contract and fraud in the inducement, just as Harris did in his counterclaim in this case. When the plaintiff refused to make an election prior to the submission of the case to the jury, the trial judge made the election for the plaintiff by directing a verdict dismissing the fraud claim. Subsequently the jury returned its verdict in favor of the plaintiff on the contract claim. On appeal, the defendant argued that the election should have been required earlier. The plaintiff responded by arguing on cross-appeal that he should not have been required to make an election at all and was entitled not only to have the jury consider both claims, but also to recover damages under both claims. The plaintiff's position plainly violated the purpose of the election of remedies doctrine by requesting a double recovery, and was rejected by the Arizona Supreme Court. The court also rejected the defendant's argument, reasoning that the plaintiff was properly permitted to develop the evidence on his inconsistent theories until he could make an informed choice between remedies. The court then held that because the trial court found that the plaintiff had in fact elected his remedy by manifesting an intent to affirm the contract, the trial court had properly dismissed the fraud claim. *Greenband* does not directly hold that a plaintiff must make an election at the conclusion of trial where a double recovery is not sought, or that submitting a contract theory to the jury automatically precludes submission on an alternative fraud theory with appropriate instructions.

In *Sun Lodge,* Division 2 of the Court of Appeals left standing a jury verdict and award of damages in favor of the plaintiff on its contract claim, and denied plaintiff's motion for new trial based upon the trial court's refusal to admit evidence on the plaintiff's fraud claim. The court stated:

"By submitting to the jury its counterclaim for damages on the [breach of contract] theory, it manifested an intention to affirm the contract which precluded recovery for fraud in its inducement." 124 Ariz. at 542, 606 P.2d at 32.

Again, in *Sun Lodge* the issue of whether a breach of contract claim and a claim for damages based upon fraud in the inducement could be submitted to the jury under appropriate instructions precluding a double recovery was not considered.

■ Mister Donut contends that the purpose of the election of remedies is not limited to prevention of double recoveries, but requires an election whenever a party asserts "inconsistent substantive rights." We see no substantive inconsistency between an action for damages for breach of contract and one for damages for fraud in its inducement. It is widely held that, because the remedies are inconsistent, an injured party must elect between his right to disaffirm the existence of a contract and sue for rescission, and the right to sue for damages for its breach thereby affirming the contract's continued existence. However, this inconsistency is not involved when a claimant is suing for damages based upon fraud in the contract's inducement rather than for rescission. An action for damages for fraud in the inducement does not constitute a disaffirmance of the contract and therefore is not inconsistent with an action for its breach. We therefore find no error in the trial court's refusal to require an election prior to the submission of Harris' claims to the jury.

We next consider certain evidentiary issues raised on appeal, since these issues will undoubtedly be presented in any retrial of this matter. Mister Donut argues that the admission of the testimony of witness Burt Smith violated Rule 404(b), Arizona Rules of Evidence, which excludes evidence of collateral bad acts to prove the character of a person in order to show that he acted in conformance therewith. Smith bought options on ten Mister Donut franchises in Phoenix and actually opened three of the donut shops. His dealings with Mister Donut were substantially similar to Harris' with the exception that they occurred some two years later; Smith entered into a franchise agreement in the fall of 1979, while Harris did so in the fall of 1977.

Smith responded to a Mister Donut franchise advertisement in a Phoenix newspaper and was referred to a franchise salesman, Eugene Bemel. Smith testified that Bemel, who came to Phoenix from Minneapolis for a meeting, told him that Mister Donut had the finest products in the country due to exclusive items that the competition did not have. Like Russell Johnson, he emphasized the superior quality of the International Multifoods products and their importance to a Mister Donut franchise. Smith specifically discussed with Bemel the possibility of becoming a distributor for International Multifoods products in order to facilitate his plan to open ten franchises. Bemel consulted with supervisors and said he knew of no obstacles to the plan.

Like Harris, Smith went to Mister Donut's baking school and testified that the school used only International Multifoods products, and only International Multifoods products were mentioned in the secret formula books. It was not until Smith was ready to open the first donut shop that he was informed that International Multifoods products were unavailable in Arizona.

Mister Donut asserts that although evidence of collateral bad acts is admissible to show intent or plan, this is true only if the facts show substantial identity of time, place, parties and context. It goes on to point out several factual differences between Harris' and Smith's situations. Mister Donut also argues that even if the evidence was admissible, it was unfairly prejudicial and thus it should have been excluded under Rule 403, Arizona Rules of Evidence. We find Mister Donut's contentions inapplicable to the facts of this case.

■ In a fraud action, similar fraudulent representations made to other persons may be received on the issues of scienter and plan or motive. *Correa v. Pecos Valley Development Corp.*, 126 Ariz. 601, 617 P.2d 767 (App.1980). Where the evidence demonstrates a continued course of representations corroborative of the plaintiff's position, it is admissible even though subsequent to plaintiff's contract and generally remote in point of time. *Olympic Land Co. v. Smithart*, 1 Ariz.App. 175, 400 P.2d 846 (1965). The value to be attached to such evidence rests with the jury. *Id.* at 179, 400 P.2d 846. We find sufficient foundation to support the admission of Smith's testimony under these standards. Smith's testimony corroborates Harris' position that Mister Donut was attempting to expand into Arizona, and was touting its unique International Multifoods products as a selling point, with full knowledge that International Multifoods products were unavailable to the prospective franchisees. The lapse in time and other factual distinctions go to the weight of the evidence.

■ Mister Donut also argues that even if the evidence is admissible under Rule 404, that its probative value is substantially outweighed by unfair prejudice in that it permitted the jury to consider matters at issue in the Smith litigation in arriving at an award of punitive damages. Thus, Mister Donut contends, the evidence should have been excluded under Rule 403.

The balancing of probative value against the possibility of prejudice under Rule 403 is within the discretion of the trial court. Its conclusion will not be disturbed absent a clear abuse of discretion. *State v. Montes*, 136 Ariz. 491, 667 P.2d 191 (1983); *State v. Robles*, 135 Ariz. 92, 659 P.2d 645 (1983); *State v. Clark*, 126 Ariz. 428, 616 P.2d 888 (1980). We find no clear abuse in this case.

Mister Donut argues next that the trial court erroneously admitted portions of the deposition of witness Eugene Bemel, taken in other litigation involving Mister Donut and Burt Smith. Mister Donut does not challenge the court's ruling that the evidence falls within Rule 804(b)(1)'s former testimony exception to the hearsay rule. It merely contends that there was an insufficient showing that the witness was unavailable. We agree.

Rule 804(a) defines unavailability for purposes of the rule as including situations where the declarant "is absent from the hearing and the proponent of his statement has been unable to procure his attendance ... by process *or other reasonable means.*" (Emphasis added). "The authorities are divided as to whether attempts must be made to induce the witness to attend voluntarily. Some authorities, including the Federal Rule, require an effort through reasonable means. Others require no more than a showing that the witness is beyond the reach of process." E. Cleary, *McCormick on Evidence*, § 253 (3d ed. 1984).

We are persuaded that the better view is that suggested by the plain language of the rule—that a reasonable effort to obtain the attendance of a witness should at least include a request for voluntary attendance where, as here, the witness's whereabouts are known. *Creamer v. General Teamsters Local Union 326,* 560 F.Supp. 495 (D.Del.1983); *see* 11 J. Moore & H. Bendix *Moore's Federal Practice* § 804.03[5] (2d ed. 1985). Counsel for Harris informed the court that he made no effort to contact Bemel, believing he had made a *prima facie* showing of unavailability by establishing that Bemel resided out of state. We hold that the proponent of hearsay evidence under Rule 804 must make a showing of unavailability which includes a reasonable attempt, under the circumstances, to obtain voluntary attendance of the declarant. *Creamer, supra.* Especially where, as here, the witness was willing to come to Arizona under similar circumstances earlier to give the very deposition testimony Harris sought to admit, there was an insufficient showing of unavailability, and Bemel's testimony was improperly admitted.

In summary, we find that the trial court erred in denying Mister Donut's motion for new trial on the fraud claim. We therefore reverse the judgment for compensatory and punitive damages entered in favor of Harris on the fraud claim, and remand the matter for further proceedings. Since Harris was not required to elect between his claims for breach of contract and fraud in the inducement, the trial court did not err in submitting both claims to the jury with a limiting instruction preventing a double recovery of damages. Mister Donut has failed to attack on appeal the propriety of the jury's verdict in favor of Harris on the breach of contract claim. Therefore, on retrial of the breach of contract claim the issues will be limited to a determination of Harris' damages resulting from that breach.

Each party shall bear its own attorney's fees on appeal.

MEYERSON, P.J., and GRANT, J., concur.