723 P.2d 670

**MISTER DONUT OF AMERICA, INC.,**
a Delaware corporation, Plaintiff
Counter-defendant-Appellant,

v.

**Dean HARRIS and Jane Doe Harris, his wife; and Jack Lane and Jane Doe Lane, his wife, Defendants Counter-claimants-Appellees.**

No. 18544–PR.

Supreme Court of Arizona,
In Banc.

July 23, 1986.

Reconsideration Denied Sept. 16, 1986.

Lewis and Roca by Patricia Norris Halstead, Edward M. Lewis, and Peter D. Baird, Phoenix, for plaintiff counter-defendant-appellant.

Toci, Murphy & Beck by Philip E. Toci and Scott M. McNamara, Prescott, for defendants counter-claimants-appellees.

CAMERON, Justice.

This is a review of a decision and opinion of the court of appeals which reversed a judgment for compensatory and punitive damages against Mister Donut of America, and remanded the matter for further proceedings. *Mister Donut of America, Inc. v. Dean Harris et al.*, 150 Ariz. 347, 723 P.2d 696 (App.1985). We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), A.R.S. § 12–120.24 and Rule 23, Ariz.R.Civ.App.P., 17A A.R.S.

We granted review to consider only two issues:

1. Did the court of appeals err when it held that the statute of limitations had run on the fraud claim?
2. Did the trial court err in admitting the deposition of an absent witness pursuant to Rule 804(a)(5), Arizona Rules of Evidence, 17A A.R.S.?

The facts follow. Defendants, Dean Harris, Jack Lane and their wives (Harris) became interested in acquiring a Mister Donut franchise through an advertisement in a national trade magazine. In response to Harris's inquiry, the company sent him a brochure. The literature said that Mister Donut donuts were produced from unique recipes owned by Mister Donut.

In November 1976, Harris and Lane met with a Mister Donut franchise salesman, Russell Johnson. The salesman emphasized the importance and role of International Multifoods in the franchise relationship. Mister Donut is a wholly owned subsidiary of International Multifoods. It is International Multifoods that manufactures the unique donut mixes used in Mister Donut donuts. Based on the salesman's representations, Harris and Lane believed that Mister Donut was expanding into Phoenix and Tucson, and that International Multifoods would be establishing a distributorship in Arizona from which they could obtain the International Multifoods products. What Harris was not told, however, was that International Multifoods was prohibited from selling its baking mix products in Arizona by an agreement entered into with DCA Industries in 1973. This prohibition ran until November 1980.

Just prior to opening the bakery, Harris was told by Mister Donut's district manager that there were no International Multifood distributors in Arizona. Harris would have to obtain his supplies from a company in St. Louis, Missouri. He could either have the supplies shipped by common carrier or drive to Albuquerque to meet the distributor's regular supply truck.

Upon opening the bakery in Prescott in September 1977 and regularly over the next three years, Harris was continually assured the problem in getting International Multifoods mixes in Arizona was a temporary one. By mid 1978, Harris had become dissatisfied with the problems in obtaining International Multifoods products and ceased paying his franchise fees. He resumed payment when Mister Donut again assured him that a distributor would be set up in Arizona.

In April 1980, Harris went to a regional sales meeting. There he learned for the first time of the restrictive covenant preventing International Multifoods from selling in Arizona. The mixes that Harris had been using were not International Multifoods mixes but were the same as those used by every other baker in Prescott. Harris stopped paying all franchise and advertising fees.

In January 1982, Mister Donut filed this action to collect unpaid franchise fees and to enforce a covenant not to compete. Harris counterclaimed for breach of contract and fraud. In March 1982, Harris also stopped making donuts and leased the building and equipment to another party.

The jury ruled against Mister Donut on its claim to collect franchise fees. Additionally, the jury awarded Harris $54,618 in compensatory damages and $750,000 in punitive damages on the fraud claim. The jury also found that Mister Donut had breached its contract with Harris, but did not award damages because, as instructed by the court, this would have resulted in a double recovery for the same acts. Mister

Donut's post trial motions for new trial, remittitur and judgment notwithstanding the verdict were all denied.

On appeal, the court of appeals reversed the judgment and damages entered in favor of Harris on the fraud claim finding that the claim was barred by the statute of limitations. The court of appeals also held that the deposition of Eugene Bemel of Minnesota was erroneously admitted. We granted Harris' petition for review on the two issues of fraud and the admissibility of the deposition.

### THE FRAUD CLAIM

At the conclusion of trial, the jury was instructed as follows:

33. With regard to the statute of limitations the law in Arizona is that a claim for fraud must be sued upon by filing a claim in Court within three years from the date of discovery of the fraud or three years from the date the defrauded party, in the exercise of reasonable diligence, should have discovered the fraud.

Harris' claim for common-law fraud was filed in Court on March 2, 1982. You must decide whether before March 2, 1979, Harris discovered or in the exercise of reasonable diligence should have discovered the common-law fraud claim he is now asserting. If you find Harris did discover or should have discovered this fraud claim, you must find for Mister Donut and against Harris on this claim and so indicate on verdict form 5.

After deliberating, the jury found for Harris on the fraud claim and awarded both compensatory and punitive damages. The court of appeals in reversing the jury's finding stated:

Early on, therefore, Harris had discovered enough inconsistencies and falsities that it was incumbent upon him to make a full investigation of the situation in order to protect himself if he felt that he had been wronged. We find that Harris' cause of action for fraud accrued, as a matter of law, by early 1978 and therefore that the jury finding that it accrued

after March 1979 was contrary to the evidence.

*Mister Donut of America, Inc. v. Harris,* 723 P.2d at 699.

■ The statute of limitations, A.R.S. § 12–543, has been interpreted to begin running when the defrauded party discovers or with reasonable diligence could have discovered the fraud. *Condos v. Felder,* 92 Ariz. 366, 377 P.2d 305 (1962); *Transamerica Ins. Co. v. Trout,* 145 Ariz. 355, 701 P.2d 851 (App.1985); *Coronado Development Corporation v. Superior Court,* 139 Ariz. 350, 678 P.2d 535 (App. 1984). As such, it may begin to run before a person has actual knowledge of the fraud or even all the underlying details of the alleged fraud. *Coronado Development Corporation v. Superior Court,* 139 Ariz. at 352, 678 P.2d at 537.

■ In the instant case, the court of appeals determined as a matter of law that the claim for fraud accrued in early 1978, and therefore was time barred. They based this finding on the grounds that Harris knew either before or soon after opening his bakery that (1) there was no Arizona distributor of International Multifoods products and (2) that he was not making the profits promised by Mister Donut. These facts, the court of appeals stated, were enough that Harris should have investigated and discovered the fraud. We do not agree.

The court of appeals, while stating that they were finding "as a matter of law" that the fraud claim accrued prior to March 1979, was essentially substituting its factual determination for that of the jury's. In reviewing this jury verdict, the evidence should be viewed in the light most favorable to Harris as the prevailing party and to afford him all reasonable inferences arising from that evidence. *McFarlin v. Hall,* 127 Ariz. 220, 619 P.2d 729 (1980). We believe that there were sufficient facts to support the jury's finding that the cause of action for fraud did not accrue until after March 1979, for three reasons.

First, Harris did not actually learn of the restrictive covenant, which is the basis of Mister Donut's fraud, until the regional sales meeting in 1980.

Second, while Harris did learn, prior to 1979, that there was not yet an Arizona distributor for International Multifoods products and that he was not making the profits promised by Mister Donut, he was continually assured by Mister Donut that the problems were temporary. Breach of contract and fraud are not the same and there can be one without the other or one before the other. *Spudnuts v. Lane,* 131 Ariz. 424, 426, 641 P.2d 912, 914 (App. 1982). That appears to be the case herein. There was evidence of breach of contract before the regional sales meeting in 1980, but the evidence was such that the jury could find that fraud was not discovered or discoverable until that meeting.

■ Finally, we note there is the special franchisor-franchisee relationship involved herein. *See* H. Brown, *Franchising—A Fiduciary Relationship,* 49 Texas Law Rev. 650 (1971). *See also* H. Brown, Franchising: Trap for the Trusting, pg. 41 (1969) ("At the core of the franchise relationship is the contractual control exercised by the franchisor over every aspect of the franchisee's business.") Generally, where such a special relationship exists between two parties, one party may rely on the other's respresentations without investigating their truth. *Union Bank v. Safanie,* 5 Ariz.App. 342, 347, 427 P.2d 146, 151 (1967). While Harris may eventually have had a duty to investigate or risk losing his fraud claim surely he was entitled to rely, at least for a while, on the constant assurances of Mister Donut, his franchisor, that all the problems would be remedied. The jury was properly instructed and in possession of sufficient facts to reach the verdict that Mister Donut was guilty of fraud and that the statute had not run on the claim. We hold that the court of appeals erred in reversing the jury's factual finding as to when the claim for fraud accrued.

## ADMISSIBILITY OF A DEPOSITION

■ The deposition of Eugene Bemel had been taken in other litigation involving Mister Donut and a Burt Smith. Over Mister Donut's objection, the deposition was admitted. Mister Donut did not challenge the court's ruling that the evidence was admissible pursuant to Rule 804(b)(1)'s exception to the hearsay rule. Mister Donut contended only that there was an insufficient showing that the witness was unavailable pursuant to Rule 804(a)(5), Ariz.R. Evid. 17A A.R.S., which reads:

(a) **Definition of unavailability.** "Unavailability as a witness" includes situations in which the declarant—

(5) is absent from the hearing and the proponent of his statement has been unable to procure his attendance (or in the case of a hearsay exception under subdivision (b)(2), (3), or (4), his attendance or testimony) by process or other reasonable means.

The court of appeals agreed, ruling that the trial court erred in admitting the deposition at trial because there was an insufficient showing that the witness was unavailable. The court of appeals held that more was required under Rule 804(a)(5) than a showing that the person was not reachable by service of process, (723 P.2d at 703), and therefore, the deposition was inadmissible. On review to this court, counsel for both parties vigorously argue the correct standard of availability under Rule 804(a)(5) and clearly illustrate that the authorities are split. *See generally Murray v. Toyota Motor Distributors, Inc.,* 664 F.2d 1377, 1379–80 (9th Cir.1982), *cert. denied,* 457 U.S. 1106, 102 S.Ct. 2905, 73 L.Ed.2d 1314 (1982); *Bailey v. Southern Pacific Transportation Co.,* 613 F.2d 1385, 1389–90 (5th Cir.1980), *cert. denied,* 449 U.S. 836, 101 S.Ct. 109, 66 L.Ed.2d 42 (1980); *Perricone v. Kansas City Southern Railway Co.,* 630 F.2d 317, 320–21 (5th Cir. 1980); *Creamer v. General Teamsters Local Union 326,* 560 F.Supp. 495, 499 (D.Del.1983).

We believe, however, that this focused analysis on Rule 804(a)(5) misses the mark.

The deposition was admissible under Rule 32(a)(3), Ariz.R.Civ.P., 16 A.R.S., which applies specifically to depositions. *See* E. Cleary, McCormick on Evidence § 253, pg. 757 (3d ed. 1984); 4A Moore's Federal Practice § 32.01[4], pg. 32–7 (1984), *cf. Ott v. Samaritan Health Service*, 127 Ariz. 485, 622 P.2d 44 (App.1980). Rule 32(a) reads in pertinent part:

**Use of depositions.** At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, *so far as admissible under the rules of evidence applied as though the witness were then present and testifying,* may be used ..., in accordance with any of the following provisions:

\* \* \* \* \* \*

(3) The deposition of a witness, whether or not a party, may be used by any party, for any purpose if the court finds:

...

(B) That the witness is at a greater distance than 50 miles from the place of trial or hearing, or is out of the State, unless it appears that the absence of the witness was procured by the party offering the deposition; or

\* \* \* \* \* \*

(D) That the party offering the deposition *has been unable to procure the attendance of the witness by subpoena;*

....

(emphasis added).

The rule goes on to point out that: **32(b) Objections to admissibility.** Subject to the provisions of Rule 28(b) and subdivision (d)(3) of this rule, objection may be made at the trial or hearing to receiving in evidence any deposition or part thereof for any reason which would require the exclusion of the evidence if the witness were then present and testifying.

At the trial, the trial judge noted:

THE COURT: I have noted from reading a copy of the deposition that Mr. Bemel is not an employee of the Plaintiff, and that he is self-employed in Minneapolis, Minnesota, which, of course, shows some prima facie showing of unavailability.

\* \* \* \* \* \*

THE COURT: It's clear to me—this Court has no subpoena power over Mr. Bemel. There is no question about that.

This appears to be all that is required in a civil case, *Erickson v. Waller*, 116 Ariz. 476, 478, 569 P.2d 1374, 1376 (App.1977), since there is no Confrontation Clause problem as in a criminal case.

■ Once a deposition is deemed admissible under Rule 32(a)(3)(D), Ariz.R.Civ.P. 16 A.R.S., specific portions of the deposition may still be found inadmissible on evidentiary grounds, such as relevancy, hearsay, etc. "applied as though the witness were then present and testifying". Rule 32(b), Ariz.R.Civ.P., 16 A.R.S. That was done in this case and portions of the deposition were not read to the jury. The deposition, however, was generally admissible for use at trial by virtue of Rule 32(a)(3)(D), Ariz.R.Civ.P. 16 A.R.S., the specific rule by which depositions as a whole are to be judged. Therefore, while the trial court may have incorrectly found the deposition admissible under Rule 804(b)(1) Ariz.R. Evid. 17A A.R.S. instead of Rule 32(a)(3), Ariz.R.Civ.P. 16 A.R.S., the reading of the deposition was nonetheless permissible. We hold the trial court did not abuse its discretion in admitting the deposition. *Erickson v. Waller, supra.*

The opinion of the court of appeals is vacated. The judgment of the trial court is affirmed.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and FELDMAN, JJ., concur.