The PASTA HOUSE COMPANY,
Plaintiff-Respondent,

v.

Elliott P. MILLER, et al.,
Defendants-Appellants.

No. 47696.

Missouri Court of Appeals,
Eastern District,
Division Four.

May 14, 1985.

James L. Rohlfing, St. Louis, for defendants-appellants.

James B. Herd, Lawrence D. Leip, St. Louis, for plaintiff-respondent.

SNYDER, Judge.

This is an appeal by Elliott Miller individually, Commissary Incorporated, Special Foods, Incorporated and Brown-Miller Incorporated, by Leslie A. Davis, trustee in bankruptcy,[1] from a judgment in favor of respondent The Pasta House Company enjoining the defendants from using the trademark "The Pasta House Company" and from using certain recipes belonging to Pasta House. The trial court also ruled against defendants on their counterclaim.

There was also a judgment against Brown-Miller, Inc. and Elliott Miller, individually, on a promissory note and a judgment that the defendants return certain furniture, fixtures and equipment, or the value, to Pasta House,[2] the furniture, fixtures and equipment having been pledged as security for the promissory note.

The judgment further ordered that certain funds held by Pasta House, and other funds interpleaded into the registry of the court by National Super Markets, Inc., be retained by, and paid over to Pasta House. The funds were accounts receivable of Brown-Miller, Commissary and Special Foods which Pasta House claimed under the security agreement between Pasta House and Brown-Miller.

The judgment is affirmed in part but reversed for a determination of the amount of the Special Foods accounts receivable awarded to Pasta House, the amount so determined to be awarded to Special Foods.

Pasta House owned the "The Pasta House Company" trademark and certain recipes which were used in their restaurants.

On November 9, 1981 Pasta House sold furniture, fixtures, equipment, a building housing their commissary, and certain inventory to Brown-Miller, Inc. for the sum of $1,250,000. Payment of a portion of the purchase price was made by Brown-Miller's promissory note to Pasta House secured by furniture, fixtures, equipment, inventory and accounts receivable, and guaranteed by Elliott Miller, individually.

Pasta House also entered into a licensing and royalty agreement with Brown-Miller. This litigation ensued after Pasta House received complaints about the quality of the licensed products sold by Brown-Miller and after Brown-Miller defaulted on payment of the license royalties and promissory note principal and interest.

Pasta House brought suit seeking an injunction against the appellants prohibiting them from using Pasta House recipes and trademarks; judgment on the promissory note; possession of pledged furniture, fixtures, equipment and accounts receivable; and judgment on Elliott Miller's individual guarantee. The trial court ruled in favor of Pasta House on all counts.

Appellants filed a four-count counterclaim. In Count I Brown-Miller and Elliott Miller asked for actual and punitive damages for alleged fraudulent misrepresentations by Pasta House. In Count II the defendants asked for a judgment for goods sold and delivered and for a decree of specific performance. In Count III Brown-Miller and Commissary prayed for an injunction, a declaratory judgment and actual and punitive damages for tortious interference with contractual rights. In Count IV Timo-

---

1. The appeal by Brown-Miller, Inc. has been dismissed with prejudice by the trustee in bankruptcy.

2. The trial court rendered judgment for the full face value of the note against Brown-Miller, Inc. and Elliott Miller individually. There can be

only one recovery. Any amount recovered as the result of the judgment ordering the return of the machinery or the payment of its value must be deducted from the amount of the judgment on the note.

thy P. Miller d/b/a Special Foods, Inc. prayed for actual and punitive damages for tortious interference with contracts. The trial court ruled against appellants on all counts of their counterclaim.

Pasta House has moved to dismiss the appeal. The motion was taken with the case and it is denied.

All four of appellants' points relied on, including the point challenging the adverse judgment on their counterclaims, charge trial court error because the judgment was against the weight of the evidence. Under Rule 73.01 and the law as set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32[1–3] (Mo. banc 1976), appellate courts are adjured to set aside a decree or judgment on the ground that it is against the weight of the evidence with caution and with the firm belief that the decree or judgment is wrong.

This court has reviewed the voluminous transcript, examined the evidence carefully, and concludes that the trial court judgment was not against the weight of the evidence and that there is substantial evidence to support the judgment, on both the Pasta House petition and the appellants' counterclaim, except for that portion of the judgment which treats Special Foods, Inc. as the alter ego of Brown-Miller or Commissary and accordingly awards Special Foods' accounts receivable to Pasta House.

At stake are portions of two funds. The first, in the amount of thirty-seven thousand, seventy-two dollars and eighty cents ($37,072.80), was paid to Pasta House by customers of Brown-Miller, Commissary and Special Foods, although the evidence was far from clear about the amount of the Special Foods accounts receivable, if any, in the funds held by Pasta House. The second fund was paid into the registry of the court by interpleader National Super Markets, Inc., and there was evidence that a portion of the second fund, the exact amount uncertain, consisted of Special Foods accounts receivable. Because Special Foods was not the alter ego of Brown-Miller, the cause must be remanded to determine the amounts of Special Foods accounts receivable which are in each fund. The amounts so determined shall then be awarded to Special Foods.

During the course of the business dealings between Pasta House and Brown-Miller, and after differences had arisen between them, two additional corporations began operating from the Brown-Miller headquarters. They were Commissary, Incorporated and Special Foods, Inc. One of the issues upon which appellants base their appeal is the implicit finding of the trial court that Commissary and Special Foods are the alter ego of Brown-Miller.

The evidence in fact proved that Commissary was the alter ego of Brown-Miller. It took over from Brown-Miller the production and sales of the retail frozen Italian food products which were the subject of the royalty and licensing agreement between Pasta House and Brown-Miller and which carried the Pasta House trademark. In addition Brown-Miller and Commissary entered into a licensing agreement for these same products. Commissary had no assets but used the Brown-Miller facilities, equipment, inventory, and employees to carry on what had been the Brown-Miller business which it had purchased from Pasta House.

■ There was substantial evidence to prove that Commissary was used for an improper purpose and to perpetrate injustice by assisting Brown-Miller to avoid its obligations under its licensing and royalty agreement with Pasta House. In such cases equity will step in, pierce the corporate veil and grant appropriate relief. *Camelot Carpets v. Metro Distributing, Co.*, 607 S.W.2d 746, 749 (Mo.App.1980).

■ There was evidence that Commissary was under the control of Brown-Miller through Elliott Miller. *Camelot Carpets v. Metro Distributing, Co., supra.* He implied strongly in his testimony that he considered Commissary as part of his retail food business. Elliott Miller's testimony on the accounting details of the businesses was far from precise and sometimes evasive, but it was obvious he dealt with

Pasta House for both Brown-Miller and Commissary. It was also apparent that Brown-Miller for a time paid Commissary employees.

Although the trial court did not rule specifically that Commissary was the alter ego of Brown-Miller, there was substantial evidence to support such a finding and the trial court's judgment awarding the Commissary accounts receivable to Pasta House. *Murphy v. Carron, supra.*

This court, then, affirms the trial court's ruling as it applies to those portions of the interpleaded fund, and the fund held by Pasta House, which came from both Brown-Miller and the Commissary accounts receivable.

Appellants argue that Commissary was a separate corporation, pointing out that Elliott Miller's son was the president and that the son and his mother were the stockholders. They seek to have this court ignore the licensing agreement between Brown-Miller and Commissary which covered the same Italian food items as were the subject of the royalty and licensing agreement between Pasta House and Brown-Miller. Appellants say they entered into the agreement when, after discussing it with house counsel, they decided the Pasta House recipes were not in fact secret. They also believed the Pasta House trademark was available to them without paying royalties because it was not federally registered. This, in spite of their signed acknowledgement in the Pasta House royalty and licensing agreement that Pasta House owned the trademark and recipes.

The facts bely appellants' assertion that the judgment as it related to Commissary's accounts receivables was against the weight of the evidence. This court does not have the requisite firm belief that the trial court erred in this respect. *Murphy v. Carron, supra.*

■ The Special Foods situation is unlike that of Commissary. Although Special Foods operated from the Brown-Miller facility, it dealt only in bulk food products which it sold primarily to National. These products were foreign to the dealings between Pasta House and Brown-Miller. Special Foods did not deal in the Pasta House Italian food products subject to the licensing agreement between Pasta House and Brown-Miller. Special Foods was not the alter ego of Brown-Miller, nor was it used for an improper purpose or to perpetrate fraud or injustice. Therefore, it was error for the trial court to award any Special Foods accounts receivable to Pasta House.

Special Foods' actions in no way worked a fraud against Pasta House. Pasta House did not prove that Special Foods was the alter ego of either Brown-Miller or Commissary nor that Special Foods existed for an improper purpose. *Phelps v. Missouri-Kansas-Texas Railroad Company*, 438 S.W.2d 181, 186[4] (Mo.1968) *cert. granted* 393 U.S. 1061, 89 S.Ct. 720, 21 L.Ed.2d 705; *cert. dismissed*, 394 U.S. 955, 89 S.Ct. 1298, 22 L.Ed.2d 494 (1969).

Pasta House points to advice Elliott Miller gave to his son, Timothy, on the operation of Special Foods, a not unusual thing, considering the relationship and not helpful to Pasta House because it was advice on the operation of a separate corporation engaged in a business entirely different from that carried on by Brown-Miller and Commissary.

Pasta House also argues that Special Foods' checks were used to meet a portion of the Commissary payroll and that Special Foods' boxes were used in shipping Commissary products. These actions could only redound to the benefit of Commissary and hence Pasta House. They do not show that the Special Foods corporation was being used for an improper purpose. In addition, there was testimony that the payroll money was a loan although there was no loan documentation.

This court has a firm belief that the trial court's implicit ruling that Special Foods was the alter ego of Brown-Miller and Commissary was against the weight of the evidence. Special Foods was not a mere instrument of and indistinct from Brown-

**464**

Miller and Commissary. *Mills v. Murray,* 472 S.W.2d 6, 13, n. 2 (Mo.App.1971).

■ Special Foods has prayed for actual and punitive damages for tortious interference with contracts in Count IV of the counterclaim. One of the essential elements of a tortious interference with contracts claim is absence of justification. *Cady v. Hartford Accident and Indemnity Company,* 439 S.W.2d 483, 485[3] (Mo. 1969).

■ Although Pasta House requested and obtained from Special Foods' customers an undetermined amount of Special Foods' accounts receivable, it cannot be said that the interference was without justifiable cause. The circumstances surrounding Special Foods' business activities—entry into business by Special Foods after the rift between Pasta House and Brown-Miller, occupation by Pasta House of the same headquarters as Brown-Miller and Commissary, assistance in the management of Special Foods by Elliott Miller, Special Foods' aid to Commissary in meeting its payroll and in packaging problems—were sufficient to justify Pasta House in believing Special Foods was indeed the alter ego of Brown-Miller and Commissary. The fact that this court has held otherwise on a narrow balancing of the evidence is not sufficient to justify a finding in favor of Special Foods on its tortious interference with contracts claims. Its point is denied.

An extended discussion of the remaining points on appeal would have no precedential value and they are denied in compliance with Rule 84.16(b).

The judgment is reversed and the cause remanded with directions to determine the amount of the Special Foods accounts receivable in both funds and to award the amount so determined to appellant Special Foods. The judgment is affirmed in all other respects.

SMITH, P.J., and SATZ, J., concur.