K.C. ROOFING CENTER, and Lumbermen's Mutual Wholesale Co., d/b/a Adam's Roofing Supply, Respondents,

v.

ON TOP ROOFING, INC., and Russell Nugent, et al., Appellants.

No. WD 43194.

Missouri Court of Appeals, Western District.

April 23, 1991.

Curtis L. Tideman, Patrick J. Gregory, Kansas City, for appellants.

H. Kent Desselle, Pamela J. Taylor, Independence, for respondent, K.C. Roofing Center.

Before SHANGLER, KENNEDY and FENNER, JJ.

KENNEDY, Judge.

This is an action by creditors to "pierce the corporate veil" and establish personal liability of individuals for corporate debt.

Plaintiffs Kansas City Roofing Center (KCRC) and Lumberman's Mutual Wholesale Company (Lumberman's) filed suit against On Top Roofing, Inc. (On Top) and Russell and Carol Nugent to recover damages for unpaid roofing supplies delivered to On Top. KCRC and Lumberman's sought to pierce the corporate veil of On Top and hold Russell and Carol Nugent personally liable for the debts incurred by On Top. The trial court consolidated KCRC's and Lumberman's actions for a joint trial. After a bench trial, the trial court found in favor of the plaintiffs and pierced the corporate veil and held Russell Nugent personally liable for those debts. Russell Nugent brought this appeal and argues that the trial court erred in piercing the corporate veil.

The evidence is to be viewed in the light most favorable to the judgment. *St. Louis County v. Oakville Dev. Co.*, 676 S.W.2d 919, 921 (Mo.App.1984). Most of the facts are derived from the testimony of Russell Nugent, who was called as an adverse witness by the plaintiffs and who also testified as part of the defendants' case. He testified that he had been involved in the roofing business in the greater Kansas City area for more than 25 years. Russell Nugent Roofing, Inc. was incorporated on March 24, 1977. Russell and his wife Carol Nugent were the sole shareholders, officers and directors of the corporation. The corporation's name was changed to On Top Roofing, Inc. on December 7, 1985. Russell and Carol Nugent remained the sole shareholders, officers and directors of On Top. The Nugents continued to do business as On Top until August 27, 1987, when On Top ceased doing business and RNR, Inc. was incorporated. Russell and Carol Nugent were the sole shareholders, officers and directors of RNR, Inc. RNR, Inc. went out of business sometime in 1988 and RLN Construction, Inc. was incorporated. Russell and Carol Nugent were the sole shareholders, officers and directors of

RLN Construction, Inc. Nugent testified that he is currently doing business as Russell Nugent, Inc. and it was incorporated in late 1988 or early 1989, at which time RLN Construction, Inc. went out of business.

Nugent testified that none of his roofing corporations were actively doing business at the same time as any of his other roofing corporations. When one roofing company was incorporated, the prior roofing company ceased doing business. All of Nugent's roofing companies, from Russell Nugent Roofing, Inc. in 1977 to the present Russell Nugent, Inc., have been located at the same business address at 614 Main in Grandview, Missouri, and have utilized the same business telephone number.

The articles of incorporation for Russell Nugent Roofing, Inc. and its successor On Top Roofing, Inc. required the corporation to maintain a board of directors consisting of three members. The court found that the corporation elected a board of three members in the first few years of its existence, but for several years prior to 1987 Russell and Carol Nugent were the only directors. Russell Nugent, Inc. presently has only one director, Russell Nugent. The articles have never been amended to provide for less than three directors. Nugent's corporation did not hold an annual meeting in 1988 or 1989, or, if annual meetings were held, no minutes were kept.

From April through August 17, 1987, KCRC advanced approximately $45,000 in roofing supplies to On Top. When On Top failed to pay for the supplies, KCRC filed suit and sought to pierce the corporate veil and have Russell and Carol Nugent personally satisfy the debt.

Nugent or one of his employees ordered 1,360 rolls of Genstar shakeliner felt from Lumberman's on November 25, 1987, at a cost of $7,367.77. A default judgment in that amount, plus costs and interest, was taken in favor of Lumberman's against On Top on August 24, 1988. The current amount due and owing on the judgment, with interest as of January 2, 1990, was $8,287.77. Lumberman's was unable to collect the judgment against On Top and filed suit to pierce the corporate veil and

hold Russell and Carol Nugent personally liable for the debt. Nugent testified that he allowed Lumberman's to take the default judgment against On Top because On Top was no longer in business when the felt was ordered and delivered to On Top and Lumberman's had actually sold the felt to RNR, Inc., the successor corporation to On Top. Nugent testified that the default judgment was against the wrong corporation and he believed he did not have to contest the lawsuit.

Nugent testified that in March of 1987, On Top could not pay its trade debts as they accrued. Nugent testified that he stopped buying materials from suppliers when the suppliers refused to advance any more material on credit. He admitted in his testimony that in the early part of 1987 he made a decision to only pay secured creditors; the only creditors he paid were those creditors "who had secured my personal guarantee or had loans against my house...." Numerous roofing suppliers, in addition to Lumberman's, have taken default judgments against On Top or its successors.

J & S Tool Fastener, Inc. got a default judgment against On Top in 1986. Nugent testified that he did not recall whether On Top had any money in 1986 and had "no idea" why J & S Tool Fastener was not paid. On Top's corporate income tax return for 1986 shows that Nugent paid himself and his wife over $100,000 in salaries in 1986.

Russell and Carol Nugent owned the property at 614 Main and charged the corporation rent. Nugent testified that the rent he charged the corporation varied; he paid or did not pay rent to himself based upon how well the corporation was doing. The corporate tax return for 1986 reflects that the corporation paid $99,290 in rent in 1986. Nugent did not know why the rent paid in 1985 was less than the rent paid in 1986. He was unable to explain what the corporation paid rent for, although he testified that the corporation paid rent other than for just the property at 614 Main.

The trial court found that On Top purchased "substantial amounts of roofing

supplies from Plaintiffs knowing it owed between $75,000.00 and $100,000.00 to previous suppliers which it was unable to pay." Mid–Am Building Supply, Inc. filed a petition against On Top on April 22, 1987, to recover $72,119.68 for roofing supplies delivered to On Top. Wood Castle Forest Products, Inc. got a judgment in the amount of $37,380 against On Top for supplies that On Top ordered on March 17, 1987, and May 2, 1987.

Nugent was questioned at trial about his succession of roofing companies:

Q. Has it been your position to change to a new corporation when the debts are built up?

A. No. I changed every time I needed a fresh start. It's a very competitive business.

The questioning continued:

Q. So, are you agreeing then that you've had five different corporate names in the last five years?

A. I've had more than that, haven't I?

Q. And why is it again, sir, that you continue to change from one corporate name to another?

A. To get a fresh start. It's a very competitive business.

On October 1, 1987, Nugent sold the assets of On Top (excluding accounts receivable) to Nuco Leasing, Inc. Nugent and his wife are the sole shareholders, officers and directors of Nuco Leasing. Included within the sale of On Top's assets was a license agreement for Nuco Leasing to use the name and logo of On Top Roofing. Nugent testified that he did not believe that RNR, Inc., RLN Construction, Inc. or Russell Nugent, Inc. had any license agreements to use the On Top Roofing name.

Nugent testified that once On Top went out of business in August of 1987, he did not use the trade name or fictitious name On Top Roofing. He testified that he used the fictitious name Tops N Roofing when he was doing business as RNR, Inc. and RLN Construction, Inc., and he used the name Top Roofing when he was doing business as Russell Nugent, Inc. Nugent admitted in his testimony that Russell Nu-

gent, Inc., his most recent roofing corporation, was not listed in the telephone book, but in the 1989–1990 telephone book there was a listing for On Top Roofing at 614 Main. He testified that at some point the name on the sign on the building at 614 Main was changed from On Top Roofing to Top Roofing, although Top Roofing was not a registered fictitious name. Photographs taken in February of 1989 were admitted into evidence which depicted the premises at 614 Main with the On Top Roofing name on the building. Photographs taken in July of 1989 were admitted into evidence which showed Nugent's business trucks with the On Top Roofing name painted on the sides. Nugent was still using estimate sheet forms with On Top Roofing Co. at the top as late as November of 1989. At the time of trial Nugent was mailing out to prospective clients flyers with the name On Top Roofing at the top with RNR, Inc. d.b.a. in small letters above the On Top name.

In its findings of fact, the trial court found that Russell Nugent exercised total control of the business activities of On Top. The court found that Carol Nugent "did not control the activities of the corporation, and was not active in making the business decisions leading to the events triggering Plaintiffs' claims." In its conclusions of law, the court stated that there was no evidence that Carol Nugent was an active participant in the wrongful and unjust conduct and it would therefore not be proper to pierce the corporate veil to reach her assets. As to Russell Nugent, the court concluded that plaintiffs had sustained their burden and entered judgment against him for the full amount of plaintiffs' claims.

On this appeal defendants allege that the trial court erred in admitting evidence of Russell Nugent's involvement with various corporate entities other than On Top because such evidence was irrelevant and immaterial to the issues raised by the pleadings in that both plaintiffs' petitions sought only to pierce the corporate veil of On Top. Defendants also allege that the trial court erred in finding that plaintiffs had proven

the elements necessary to pierce the corporate veil of On Top to reach Russell Nugent's assets.

The trial court's judgment is to be sustained unless it is not supported by substantial evidence, is against the weight of the evidence, or is the product of an erroneous declaration or application of the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Before a judgment in a court-tried case is deemed to be against the weight of the evidence this court must establish a *"firm belief"* the judgment is wrong." *Ozark Wood Industries, Inc. v. First Nat'l Bank*, 625 S.W.2d 651, 654 (Mo. App.1981).

■ We take up first the question of whether the trial court erred in piercing the corporate veil of On Top to hold Russell Nugent personally liable on plaintiffs' claims. Shareholder insulation from liability for corporate debts or obligations has been a cornerstone of corporate law in the United States since the 19th century. 18A Am.Jur.2d *Corporations* § 850 (1985). Although courts will look through corporate organizations to individuals when necessary to prevent injustice, doing so is the exception rather than the rule, and, ordinarily, a corporation will be regarded as a separate legal entity even though there is but a single stockholder. *Love v. Ben Hicks Chevrolet, Inc.*, 655 S.W.2d 574, 576 (Mo.App.1983).

The law with respect to piercing the corporate veil in Missouri is set forth in *Collet v. American Nat'l Stores, Inc.*, 708 S.W.2d 273 (Mo.App.1986). Courts will pierce the corporate veil or disregard the corporate entity once a plaintiff shows:

(1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and

(2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights; and

(3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Id.* at 284. "Where a corporation is used for an improper purpose and to perpetrate injustice by which it avoids its legal obligations, 'equity will step in, pierce the corporate veil and grant appropriate relief.'" *Irwin v. Bertelsmeyer*, 730 S.W.2d 302, 304 (Mo.App.1987) (quoting *Pasta House Co. v. Miller*, 691 S.W.2d 460, 462 (Mo.App.1985)).

■ There was substantial evidence to support the trial court's finding that the three-part test for piercing the corporate veil was satisfied in this case. Russell Nugent was clearly in control of On Top Roofing, Inc. He and his wife were the sole shareholders of the corporation and he was the president and chief operating officer and clearly made all the decisions.

■ There also was substantial evidence to support the second and third prongs of the test. A court may pierce the corporate veil or disregard the separate legal entity of the corporation and the individual where the separateness is used as a subterfuge to defraud a creditor. *Community Fed. Sav. & Loan Ass'n v. Boyer*, 710 S.W.2d 332, 334 (Mo.App.1986). But actual fraud is not necessarily a predicate for piercing the corporate veil; it may also be pierced to prevent injustice or inequitable consequences. 18 Am.Jur.2d *Corporations* § 50 (1985); 1 Fletcher *Cyclopedia Corporations* § 41.10 (1990); *Irwin v. Bertelsmeyer*, 730 S.W.2d at 304. From the evidence it appears that Russell Nugent was operating an intricate corporate shell game in which he would cease doing business as one corporate entity when he was unable to pay the corporation's creditors and he then would form another corporation in place of the prior one in order to get a "fresh start." After On Top supposedly went out of business in the summer of 1987, for at least two years Nugent continued to run an On Top Roofing Yellow Pages ad, kept the On Top Roofing name on the sign on the building at 614 Main, kept the On Top Roofing name on the side

of his roofing trucks, continued to use bid estimate sheets with the On Top Roofing name on them, and continued to represent to callers over the telephone that he was still operating as On Top Roofing. Although Nugent was only paying secured creditors of On Top, he went ahead and ordered the supplies from the plaintiffs—both of which were unsecured—at a time when On Top was insolvent and had outstanding debt of approximately $100,000 to other roofing suppliers.

Through his domination and control over On Top, Russell Nugent was using it for the unfair or inequitable purpose of avoiding their debts to plaintiffs. Nugent continued to hold On Top out to the public as though it was still operating after it supposedly went out of business, yet he refused to honor On Top's obligations to its creditors. The actions of Nugent worked at least an injustice if not to defraud the plaintiffs. It would be unfair, unjust or inequitable to allow Nugent to hide behind the corporate shield and avoid his legal obligations to plaintiffs. We hold that the trial court did not err in piercing the corporate veil and holding Russell Nugent personally liable for the debts owed plaintiffs.

 Nugent also alleges that the trial court erred in admitting evidence of his involvement with corporate entities other than On Top "because said evidence was irrelevant and immaterial to the issues raised by the pleadings...." Nugent argues that evidence addressing the conduct of his subsequent corporations is "completely irrelevant" to the issue of whether the corporate veil of On Top should be pierced.

Evidence is relevant if it tends to prove or disprove a fact in issue, or to corroborate evidence which is relevant and which bears on the principal issue. *Arie v. Intertherm, Inc.*, 648 S.W.2d 142, 154 (Mo. App.1983). The evidence in question helped shed light on the issue of whether Nugent should be held personally liable to prevent injustice or prevent a wrong. The evidence demonstrates a pattern of activity or scheme or plan which is corroborative of plaintiffs' position, and it is admissible even

though subsequent to plaintiffs' dealings with defendants. *See Mister Donut of America, Inc. v. Harris*, 150 Ariz. 347, 723 P.2d 696, 702 (Ariz.Ct.App.1985), *vacated on other grounds*, 150 Ariz. 321, 723 P.2d 670 (Ariz.1986) (en banc); Fed.R.Evid. 404(b); Jones on Evidence § 4:13; *see also Irwin v. Bertelsmeyer*, 730 S.W.2d at 304. The trial court is vested with substantial discretion in controlling and ruling on the admissibility of evidence. *Gant v. Hanks*, 614 S.W.2d 740, 744 (Mo.App.1981). The trial court did not abuse its discretion in allowing the testimony of Nugent's involvement with corporate entities other than On Top Roofing, Inc.

Judgment affirmed.

All concur.