**Benjamin Bird MOORE, Joseph Handy Moore, and Faye Moore Ely, Plaintiffs–Appellants,**

v.

**SWAYNE–HUNTER FARMS, INC., Defendant–Respondent.**

No. 17719.

Missouri Court of Appeals, Southern District, Division Two.

Nov. 19, 1992.

John L. Oliver, Jr., Oliver, Oliver, Waltz & Cook, P.C., Cape Girardeau, for plaintiffs-appellants.

James R. Robison, Sikeston, for defendant-respondent.

FLANIGAN, Judge.

On May 1, 1990, plaintiffs filed this ejectment action against defendant Swayne–Hunter Farms, Inc., in the Circuit Court of Mississippi County. The petition alleged that plaintiffs were the owners in fee simple of the land and that defendant was wrongfully withholding possession. The petition sought recovery for losses allegedly incurred by reason of defendant's conduct. The land involved consists of a 160–acre tract, less 10 acres which were condemned for highway purposes in a 1960 condemnation proceeding.

Defendant's answer admitted that it was in possession of the land and alleged that defendant was the lawful owner. The an-

swer also alleged: In 1932 the land was sold for unpaid taxes; defendant's predecessor in title purchased the land at the tax sale; plaintiffs and their predecessors failed to comply with two statutes setting time limits on the right to redeem land sold for taxes or to attack a tax sale. One of the statutes pleaded in the answer prescribed a period of two years after the tax sale, and the other statute prescribed a period of three years after the recordation of the tax deed, which took place in 1932.

After a non-jury trial, the court found the issues against plaintiffs and in favor of defendant. Plaintiffs appeal. There is no factual dispute. The statement of facts contained in the brief of plaintiffs-appellants is accepted by defendant-respondent.

Plaintiffs contend that they are entitled to relief on their petition and the trial court erred in ruling otherwise, because: (a) the judgment entered in 1960 in the condemnation proceeding adjudicated plaintiffs' interest in the land, and defendant was bound by that adjudication; alternatively, (b) the 1932 tax sale conveyed to defendant's predecessor in title only a life estate for the life of Ben Bird Moore, who died on November 26, 1989; on his death, plaintiffs, who prior to his death held a contingent remainder in fee, became entitled to possession.

Defendant contends that the trial court properly denied plaintiffs relief on their petition because: (a) the judgment in the 1960 condemnation action was not conclusive in this action because the condemnation action "affects only the property involved in that case"—the 10 acres taken for highway purposes; (b) "actions in condemnation do not try title to real estate"; (c) defendant's predecessor in title acquired a fee simple title when he purchased the land at the 1932 tax sale and "plaintiffs had a duty to redeem the land from the tax sale" and "failed to do so for over 58 years and their claim to the land is now barred by the statute of limitations."

For the reasons which follow, this court holds that the judgment in the 1960 condemnation action adjudicated plaintiffs' interest in the land, that defendant was bound by that adjudication, and that plaintiffs were entitled to relief on their petition. This ruling makes it unnecessary to consider the respective contentions of the parties concerning the legal effect of the 1932 tax sale and the applicability or inapplicability of statutes of limitations pertaining to post-tax sale redemption rights.

In 1917, title to the 160–acre tract was conveyed to "Ben Bird Moore and the heirs of his body." Ben Bird Moore died on November 26, 1989. The three plaintiffs are his surviving children.

Where A conveys to B and the heirs of his body, the effect under V.A.M.S. § 442.470 is to create an ordinary life estate in B, a contingent remainder in fee in B's issue per stirpes, and a reversion in A. The life estate in B is an ordinary life estate with the usual incidents. B can convey a life estate only. If B purports to convey a fee simple, the statute of limitations does not begin to run against the remaindermen or reversioner until B's death. The remainder in B's issue is contingent on B having issue and on the issue surviving B.... The contingent remainder is freely alienable, by quitclaim as well as by warranty deed, by presumptive heirs of the body, but the grantee of the contingent remainder takes subject to the contingency of his grantor surviving the life tenant.

Possessory Estates, Future Interests and Conveyances in Missouri, by Willard L. Eckhardt and Paul M. Peterson, 23 V.A.M.S.Pamph. 1. To similar effect see *Easter v. Ochs*, 837 S.W.2d 516 (Mo.banc 1992); *Ragan v. Looney*, 377 S.W.2d 273, 280[13, 14] (Mo.1964); *Hughes v. Neely*, 332 S.W.2d 1, 9–10[13] (Mo.1960); *Cook v. Daniels*, 306 S.W.2d 573, 576[3, 4] (Mo. 1957). Upon the death of the life tenant, Ben Bird Moore, the three plaintiffs became the heirs of his body.

### The 1960 Condemnation Action

In 1960, the three plaintiffs, then presumptive heirs of the body of the still-living life tenant, were parties to the condemnation action instituted by the State of Missouri. Also a party to the condemnation

action was Thomas Swayne Byrd.[1] Other defendants in that proceeding were the children of some of the three instant plaintiffs who were then included in the class of possible heirs of the body of the life tenant.

The conflicting claims of plaintiffs on the one hand, and Thomas Swayne Byrd on the other, to the 160–acre tract, were placed in issue in the 1960 condemnation proceeding. The state paid $4,050 into court as compensation for the condemned portion (approximately 10 acres) of the 160–acre tract.

The instant plaintiffs filed a "Petition for Distribution of Funds," in which they claimed an interest in the money. Their pleading alleged: They (and the other class members) are "the ostensible contingent heirs of the body of [the life tenant]"; the 160–acre tract was left to the life tenant during his lifetime and, after his death, to the heirs of his body; the petitioners are all the present living contingent heirs of the body of the life tenant, and file this motion in their own behalf and in behalf of all other contingent heirs of the body of the life tenant who may be such heirs of the body at the time of the life tenant's death; the petitioners and those whom they represent own the corpus of the money ($4,050) subject to the use thereof or the income therefrom, during the life of the life tenant, by the present owner of the life estate whom they believe to be Thomas Swayne Byrd.

Thomas Swayne Byrd filed an "Answer and Cross Petition for Distribution of Funds," in which he pleaded the title history of the 160–acre tract. He pleaded that by reason of mesne conveyances he "now holds said real estate and claims title thereto in fee." He prayed that all of the money be paid over to him.

The judgment in the condemnation action found the issues in favor of instant plaintiffs and against Thomas Swayne Byrd and ordered the money ($4,050) deposited in a savings and loan association, in trust, with the net income derived from the deposit to be paid to Thomas Swayne Byrd (or his successors in interest) during the life of the life tenant, and upon the death of the life tenant, the principal ($4,050) to be distributed to the then living heirs of the body of the life tenant.

The judgment contained the following findings: Thomas Swayne Byrd was the owner of a life estate in the condemned portion of the 160–acre tract during the life of the life tenant and [the instant plaintiffs and the other class members] were the owners of "the remainder fee estate, subject only to the life estate vested in Thomas Swayne Byrd during the lifetime of [the life tenant]."

There was no appeal from the first judgment, and the parties carried it out. Thomas Swayne Byrd received the interest on the $4,050 until the death of the life tenant in 1989, at which time the money was divided equally among the instant plaintiffs.

## The Present Action

Plaintiffs' position is that the judgment in the condemnation proceeding, whether it was right or wrong, was binding on defendant as to the issue of plaintiffs' interest in the land. Plaintiffs argue that the condemnation judgment was correct because in the 1932 proceeding, which culminated in the tax sale, only the life tenant was made a defendant. The contingent remaindermen were not named as defendants in the 1932 proceeding. Defendant argues that the contingent remaindermen lost their right to challenge the 1932 tax sale by not exercising that right prior to 1936.

■ It is unnecessary to inquire into the correctness of the judgment in the condemnation action because the applicability of the doctrine of collateral estoppel is not affected by the legal correctness or incorrectness of the prior adjudication. *Sunshine Realty Corp. v. Killian*, 702 S.W.2d 95, 99[3] (Mo.App.1985). All of the issues concerning the legal effect of the 1932 tax sale, and the alleged noncompliance by plaintiffs with the redemption statutes,

1. Instant defendant was the grantee in a quitclaim deed dated November 7, 1978, in which Thomas Swayne Byrd was grantor.

were matters which were ripe for contest in the condemnation proceeding.

A case which is of controlling effect on most of the issues in this action is *Murphy v. Barron,* 286 Mo. 390, 228 S.W. 492 (1920), a case cited by neither party. The facts in *Murphy* closely parallel the instant facts and require discussion.

In 1914, plaintiff Murphy sued defendant Barron, seeking, with respect to certain land, a judgment in quiet title and eject-ment. In 1901, Murphy was the owner of the land. In 1903 Murphy failed to pay the taxes, and the land was sold, under a judg-ment in a delinquent tax proceeding, to one Green who in turn conveyed it to defendant Barron.

In 1912, a condemnation action was insti-tuted with respect to a portion of the land, and Murphy and Barron were made parties to that proceeding. Barron filed a pleading alleging that he was the owner of the land and that Murphy had no interest. Murphy filed a pleading in which he alleged he was the owner of the condemned portion. The trial court heard evidence on the conflicting claims and found that Barron was the own-er of the land, that Murphy had no title, and that Barron was entitled to the con-demnation award of $100. On appeal to the Springfield Court of Appeals, the judg-ment was affirmed.

In the 1914 action, the trial court found in favor of Murphy, and Barron appealed. The supreme court held that the adjudica-tion in the condemnation case was conclu-sive evidence of Barron's title to the entire tract, not just the portion condemned, and that Barron was the owner. The judgment was reversed and the cause was remanded with directions to enter judgment for Bar-ron.

At 228 S.W. at 497–499 the court said:

Does the trial of the question of title in the contest over the ownership of the $100 fund and the final judgment ad-verse to [Murphy] thereon estop them to relitigate the question of title in this case and as against [Barron], who was suc-cessful as against [Murphy] in the con-test over the fund?

The judgment in the contest over the fund did not directly affect the title to the land in such sense as to give this court jurisdiction of the appeal in that proceeding.[2] It was so held in *Hilton v. St. Louis,* 129 Mo. [389] loc. cit. 391, 392, 31 S.W. 771, on facts somewhat like those in this case. In that case, as in this, on the trial of the rights of parties defendant in condemnation proceedings to the fund awarded, the sole question in issue was the ownership of the land tak-en and damaged, but it was held this court had no jurisdiction because the judgment in that controversy did not di-rectly affect title. That case and others hold that to give this court jurisdiction it is not enough that the pleadings draw in question the title or that a determination of title is necessary to a solution of the issues, but to give jurisdiction here on that ground the judgment sought or ren-dered must directly affect or operate on the title itself.... The judgment in this case had no such effect. That rule is applied because of a constitutional di-rection that jurisdiction shall be taken by this court on appeal when title to real estate is involved and because of the construction given by this court to that mandate.

It does not follow from this rule which governs appellate jurisdiction that title was not tried on the interpleas in such sense as to bar a relitigation of that question between the parties to this case. That depends upon a different principle. As stated, the statute, as does the Con-stitution, gives the award to the owner of the land taken and damaged; the inter-pleas put the title in issue; the record here conclusively shows the court tried that single issue, and that its finding was upon that issue. It was upon this sole issue that the right to the award depend-ed and was determined.

.    .    .    .    .

The actual issue made concerned the title to the whole 40 acres across which the right of way ran. The evidence related in all respects to the title to the entire tract. The deeds and records offered included the whole. The sole effort of each party was to show title to the whole and by this means substantiate his claim to the fund which represented but a part of the whole. Is the estoppel of the finding or verdict limited, in these circumstances, to the strip taken for right of way, or does its bar extend to this controversy over the title of that part of the 40 acres not taken for right of way? Let it be conceded that a grantee of [Murphy] might not have been estopped in a contest with [Barron] over the title to the tract involved in this case under the principle announced in *Hart v. Moulton,* 104 Wis. [349] loc. cit. 353 et seq., 80 N.W. 599, 76 Am.St.Rep. 881, and *Grunert v. Spalding,* 104 Wis. [193] loc. cit. 225, 80 N.W. 589; that estoppel of those in privity is limited to the very subject-matter in question when the judgment was rendered. Those decisions further announce, in contrast, that the estoppel as between the parties, is personal and extends to the whole issue litigated, though the subject-matter be different.

. . . . .

In *Custer v. Hall,* 71 W.Va. [119] loc. cit. 123, 76 S.E. 183, it is held that an adjudication of the title to a particular tract of land, or an undivided interest therein, is conclusive between the same parties with respect to the title to another tract claimed adversely by them, in the same manner and under the same chain of conveyances.

Thomas Swayne Byrd was a party to the 1960 condemnation action. If Thomas Swayne Byrd were the sole defendant in the instant action, it is clear, under *Murphy,* that the three plaintiffs would be entitled to relief.

Is that result changed by reason of the fact that the defendant here is Swayne–Hunter Farms, Inc., a Missouri corporation, of which Thomas Swayne Byrd is president, sole shareholder and an officer? Defendant claims under the 1978 quitclaim deed in which it was grantee and Thomas Swayne Byrd was grantor. The foregoing quotation from *Murphy* contains dictum, citing the two Wisconsin cases, to the effect that a grantee of Murphy "might not have been estopped in a contest with [Barron] over the title to the tract involved in this case." "Any reported opinion should be read in the light of the facts of that particular case, and it would be unfair as well as improper 'to give permanent and controlling effect to casual statements outside the scope of the real inquiry.' " *State v. Miles Laboratories, Inc.,* 282 S.W.2d 564, 573[12] (Mo.banc 1955.) The facts in *Murphy* did not involve a grantee. The instant facts involve a grantee, but one having a close relationship with the grantor.

Because the present action involves the 150 acres not taken in the 1960 condemnation action, this case, as pointed out in *Murphy,* involves application of the principles of collateral estoppel rather than the kindred doctrine of res judicata. For the distinction between the two doctrines, see *Am. Polled Hereford Assoc. v. City of Kansas City,* 626 S.W.2d 237, 241[3, 4] (Mo.1982); *Barkley v. Carter County State Bank,* 791 S.W.2d 906, 910–914 (Mo. App.1990).

Although defendant is the grantee, under the 1978 quitclaim deed, of Thomas Swayne Byrd's interest in the land, the evidence shows that defendant is merely his alter ego. Byrd testified at the trial of the present action, as a defense witness, that "I have been in continuous possession of the land since 1957." He identified defendant's Exhibit E as a document "prepared by my office," showing the "ongoing contract for farming" with one Brown, a tenant farmer of the land. Defendant's Exhibit E, which makes no mention of defendant, is signed by Thomas Swayne Byrd and he is identified as "Thomas Swayne Byrd, Owner." Byrd also testified that, in connection with the land, "last week I received $916 from the government, which was a government payment subsidy for corn." For the reasons which follow, this

court holds that defendant is in privity with Thomas Swayne Byrd for collateral estoppel purposes.

Restatement (Second) of Judgments takes the following positions: A judgment in an action that determines interests in real property, with respect to the property involved in the action, conclusively determines the claims of the parties to the action regarding their interests and has preclusive effects upon a person who succeeds to the interests of a party to the same extent as upon the party himself, § 43(1). With respect to other property held by a party to the action, a judgment in an action that determines interests in real property does not preclude a person who is a successor in interest thereof from subsequently litigating issues, determined in the action, § 43(2). Generally a judgment in an action involving a party who is an officer, director or stockholder of a corporation does not have preclusive effects on the corporation itself, § 59. If a relationship exists between a corporation and an officer, director or stockholder, such as that of successor in interest to property, from which preclusive effects follow under rules governing that relationship, the judgment has preclusive effects in accordance with those rules, § 59(1).

The foregoing propositions are subject to qualifications, including that contained in § 59(3), which reads, in pertinent part:

(3) If the corporation is closely held, in that one or a few persons hold substantially the entire ownership in it, the judgment in an action by or against the corporation or the holder of ownership in it is conclusive upon the other of them as to issues determined therein as follows:

.    .    .    .    .

(b) The judgment in an action by or against the holder of ownership in the corporation is conclusive upon the corporation except when relitigation of the issue is justified in order to protect the interest of another owner or a creditor of the corporation.

Restatement (Second) of Judgments § 59 comment e (1980) reads, in pertinent part:

... For the purpose of affording opportunity for a day in court on issues contested in litigation, however, there is no good reason why a closely held corporation and its owners should be ordinarily regarded as legally distinct. On the contrary, it may be presumed that their interests coincide and that one opportunity to litigate issues that concern them in common should sufficiently protect both.

The Reporter's Note under § 59 of the Restatement (Second) of Judgments cites many cases in support of the following statement:

In recent years the decisions involving issues actually litigated by either the closely held corporation or its controlling owners appear uniformly to have applied the rule of issue preclusion. They often invoke the rule regarding control of the litigation or the alter ego concept as an escape from the traditional rule. These references can be taken as expressing the propositions that preclusion may be imposed on an individual only if he had fair opportunity to litigate and upon a corporation only if its interests coincide with those of the stockholder who was party to the litigation.

"[I]f estoppel is asserted against the corporation based on prior litigation by a shareholder, preclusion is only denied where the interests of third parties would be unfairly concluded by barring relitigation." *Aetna Cas. and Sur. v. Kerr-McGee Chemical Corp.*, 875 F.2d 1252, 1259[3] (7th Cir.1989). "[T]he public policies underlying the doctrine of collateral estoppel, 'as a bar to repetitious litigation, would support a finding of privity between a close corporation and its sole or controlling stockholder.'" *In re Gottheiner*, 703 F.2d 1136, 1140 (9th Cir.1983).

This court's attention has not been directed to any Missouri case dealing with the collateral estoppel effect of a judgment, in an action by or against the holder of ownership in a closely held corporation, as to an issue determined therein in a subsequent action by or against the corporation. There is, however, Missouri authority

generally consistent with the foregoing principles.

 The doctrine of collateral estoppel precludes the same parties or those in privity from relitigating issues which have been previously litigated. *Brown v. Jones*, 735 S.W.2d 155, 157[1] (Mo.App.1987). Whether parties are in privity for collateral estoppel purposes depends mostly on their relationship to the subject matter of the litigation. *Missouri Ins. Guar. Ass'n v. Wal–Mart*, 811 S.W.2d 28, 32[3] (Mo.App.1991). A privy, within the doctrine of collateral estoppel, means one so related by identity of interest with the party to the judgment that such party represented the same legal right. *City of Ste. Genevieve v. Ste. Genevieve Ready Mix, Inc.*, 765 S.W.2d 361, 364[3] (Mo.App.1989). Persons are in privity for collateral estoppel purposes when the interests of the nonparty are so closely related to the interests of the party, that the nonparty can fairly be considered to have had his day in court. *Johnston v. Allis–Chalmers Corp.*, 736 S.W.2d 544, 549[9] (Mo.App.1987). Although ordinarily a corporation will be regarded as a separate legal entity even though there is but a single stockholder, *K.C. Roofing Center v. On Top Roofing, Inc.*, 807 S.W.2d 545, 549[2] (Mo.App.1991), the corporate veil may be pierced "to prevent injustice or inequitable consequences," and actual fraud is not necessary. *Id.* at 549[5].

 This court holds that the judgment in the 1960 condemnation action decided the issue, as between the three plaintiffs on the one hand and Thomas Swayne Byrd on the other hand, of plaintiffs' interest in the 160–acre tract, of which the involved land is a part, and that, by reason of the doctrine of collateral estoppel, the determination of that issue is binding upon defendant as the privy of Thomas Swayne Byrd.

Upon the death of Ben Bird Moore on November 26, 1989, plaintiffs became the owners in fee simple and entitled to possession of the 150 acres described in paragraph 1 of plaintiffs' petition. Since the judgment of the trial court was for the wrong party and did not address the issue of plaintiffs' damages, it is necessary to reverse and remand for a new trial on that issue.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion. It is so ordered.

MONTGOMERY, P.J., and PREWITT, J., concur.