Joseph C. SANSONE, d/b/a Property Tax Research Company, Respondent,

v.

Richard F. MOSELEY, Appellant.

No. WD 50723.

Missouri Court of Appeals, Western District.

Dec. 19, 1995.

Donald E. Bucher, Kansas City, for Appellant.

Curtis L. Tideman, Overland Park, for Respondent.

Before LOWENSTEIN, P.J., and ULRICH and SMITH, JJ.

SMITH, Judge.

Richard Moseley appeals the trial court's decision in favor of Joseph Sansone d/b/a Property Tax Research Company (PTR) to pierce the corporate veil and hold him personally liable for a judgment against Moseley Group Management Company (Moseley Group).[1] The judgment of the trial court is affirmed.

Moseley Group was a Missouri corporation formed to provide fee management services to apartment complexes. The stock of the company was owned equally by Richard Moseley and Dr. David Moore. Dr. Moore was a passive investor in the company, while Mr. Moseley took care of its day-to-day operations.

PTR is a proprietorship engaged in the business of reducing property taxes for a fee. On December 2, 1988, PTR entered into a written contract with Moseley Group to research and evaluate the property taxes of an apartment complex managed by Moseley Group. The contract provided that PTR be paid a contingent fee based on the tax savings from a reduction of property taxes. Eventually, the assessed value of the apartment complex was reduced resulting in a tax savings. PTR claimed a fee from Moseley Group in the amount of $67,801.50 which Moseley Group refused to pay.

PTR sued Moseley Group to recover the unpaid fees and, on July 19, 1991, obtained a judgment against it in the amount of $67,-801.50. On September 13, 1991, PTR garnished the bank account of Moseley Group in an effort to collect the judgment and received $4,403.73.

Four days later, Terrace Management, Inc. (Terrace) was incorporated by Mr. Moseley without the knowledge and consent of Dr. Moore. The equipment of Moseley Group was transferred to Terrace, and the former employees of Moseley Group became employees of Terrace. Terrace assumed a line of credit note with a balance of $7,000 owed by Moseley Group. Furthermore, the management contracts of Moseley Group were canceled, and new management agreements were entered into with Terrace.

PTR then filed a petition asking the trial court to pierce the corporate veil or disregard the separate corporate entity and hold Terrace, Mr. Moseley, and Dr. Moore liable for the unpaid balance of the July 19, 1991 judgment plus interest. Before trial, Dr. Moore entered into a settlement agreement with PTR whereby he paid PTR $10,000 and the claims against him were dismissed. The agreement provided that the $10,000 was to be applied to the collection costs of PTR, not to reduce the outstanding balance on the judgment. The trial court ruled in favor of PTR and entered judgment against Terrace and Mr. Moseley, jointly and severally, in the amount of $78,452.48. This appeal followed.

■ As his first point on appeal, Mr. Moseley claims that the trial court erred in finding him personally liable for the July 19, 1991 judgment against Moseley Group. He argues that there was insufficient evidence to support a finding that his wrongful acts caused damage to PTR. Furthermore, he contends that the evidence was insufficient to support the amount of damages.

■ In a bench-tried case, the judgment of the trial court will be upheld unless it is not supported by substantial evidence, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

■ To pierce the corporate veil, a plaintiff must show:

(1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business

---

1. Appellant's brief incorrectly identifies Terrace Management, Inc. as an appellant in this appeal. Terrace did not file a notice of appeal as required by Rule 81.04, therefore, this court has no jurisdiction over the trial court's judgment as to Terrace.

practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and

(2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights; and

(3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Collet v. American Nat'l Stores, Inc.,* 708 S.W.2d 273, 284 (Mo.App.1986) (citing *National Bond Fin. Co. v. General Motors Corp.,* 238 F.Supp. 248, 255 (W.D.Mo.1964)). A court may pierce the corporate veil or disregard the separate corporate entity if the separateness is used as a subterfuge to defraud a creditor. *Edward D. Gevers Heating & Air Conditioning Co. v. R. Webbe Corp.,* 885 S.W.2d 771, 773 (Mo.App.1994); *K.C. Roofing Center v. On Top Roofing, Inc.,* 807 S.W.2d 545, 549 (Mo.App.1991). The existence of a corporate entity will be disregarded when it is operated while undercapitalized or when its assets are stripped to avoid the demands of creditors. *Collet,* 708 S.W.2d at 286–87. Further evidence of the use of a corporate identity to defraud creditors is the transfer by the debtor corporation of its property to a second corporation when both are controlled by the same person. *Gevers,* 885 S.W.2d at 773.

In this case, there is ample evidence of undercapitalization and fraudulent transfer of property. Mr. Moseley testified that Moseley Group had no substantial retained earnings, owned no real estate, and could just barely cover overhead and operating expenses. Moseley Group owned equipment with a value of only $500 and maintained a bank account with an average balance of just $1,500. After PTR garnished the bank account of Moseley Group, its assets were transferred to Terrace, another corporation controlled by Mr. Moseley. Moseley Group's management contracts were canceled and rewritten with Terrace, and employees of Moseley Group became employees of Terrace.

There is substantial evidence from which the court could infer that Mr. Moseley formed Terrace to continue the business of Moseley Group while avoiding the PTR judgment. Mr. Moseley admitted at trial that he was angry about the PTR judgment, that he did not want PTR to be paid, and that he made no effort to satisfy the judgment. The cancellation of Moseley Group's management contracts and the transfer of its assets to Terrace effectively caused PTR's inability to collect its judgment against Moseley Group. Injury to PTR, therefore, was sufficiently established to allow the corporate veil to be pierced.

■ Finally, Mr. Moseley contends that if the corporate veil is pierced in this case, the judgment should be limited to the value of the assets stripped from the Moseley Group. He argues that damages exceeding the value of the assets stripped were not proximately caused by the wrongful acts of Mr. Moseley as required by the third prong of the tripartite test set forth in *Collet.* In his argument, Mr. Moseley assumes that the sole basis for the trial court piercing the corporate veil was for asset stripping, and, therefore, damages should be limited to the value of the assets that would have been available to satisfy the Johnson County judgment if they had not been stripped. The record does not support Mr. Moseley's assumption as to the basis for the trial court piercing the corporate veil, and even if it did, there simply is no authority for his contention for limiting damages.

In *Collet,* the Eastern District held that when the wrongful action of a dominant corporation renders the subservient corporation insolvent, the injury and causal connection required by the third prong of the test to pierce the corporate veil are established. *Collet v. American Nat. Stores, Inc.,* 708 S.W.2d at 287. In this case, the evidence supports the fact that PTR was an unpaid judgment creditor of the Moseley Group by virtue of the Johnson County judgment which was properly admitted into evidence. The record would further reflect that the Moseley Group was insolvent and had no assets to satisfy the judgment as a result of asset stripping and undercapitalization of the

corporation by Mr. Moseley.[2] Such evidence was sufficient to establish the injury and causal connection required by the third prong of the test. Contrary to Mr. Moseley's contention, no further proof was necessary to establish the amount of damages awarded by the trial court in this case. The trial court, therefore, did not err in piercing the corporate veil and holding Mr. Moseley personally liable for the July 19, 1991 judgment plus interest. Point I is denied.

■ In his second point, Mr. Moseley claims that the trial court erred in failing to reduce the amount of the judgment against him by Dr. Moore's $10,000 settlement. He argues that on a joint and several obligation, the award of actual damages against a nonsettling debtor must be reduced by the amount of consideration paid by the settling debtor.

■ A judgment may be satisfied or discharged by the giving of a release. *Hatfield v. Cristopher,* 841 S.W.2d 761, 766 (Mo. App.1992). A release is a contract requiring consideration and is governed by the same principles applicable to any other contractual agreement. *Andes v. Albano,* 853 S.W.2d 936, 941 (Mo. banc 1993); *Hatfield,* 841 S.W.2d at 766. The interpretation of a release is governed by the intention of the parties. *Id.* "Any question regarding the scope and extent of the release is to be resolved according to what may fairly be said to have been within the contemplation of the parties at the time the release was given." *Andes,* 853 S.W.2d at 941.

Section 431.150, RSMo 1994 provides for the release of one of several debtors without impairing the right of the creditor to collect from the other debtors. It states:

> It shall be lawful for every creditor of two of more debtors, joint and several, to compound with any and every one or more of his debtors for such sum as he may see fit, and to release him or them from all further liability to him for such indebtedness, without impairing his right to demand and collect the *balance* of such indebtedness from the other debtor or debtors thereof,

and not so released; provided, that no such release shall impair the right of any debtor of such indebtedness, not so released, to have contribution from his codebtors, as is by law now secured to him. (emphasis added.)

§ 431.150, RSMo 1994.

Before trial, Dr. Moore agreed to pay PTR the sum of $10,000 towards PTR's collection costs in exchange for PTR's release of Dr. Moore. The agreement specifically provided that the payment would not reduce the amount of the July 19, 1991 judgment. Therefore, in this case, the balance of the indebtedness as referred to in § 431.150 remained the same. Inasmuch as the balance of the indebtedness did not change, the application of § 431.150 to the facts of this case would not entitle Mr. Moseley to a $10,000 reduction in the judgment as he contends. Additionally, the amount of contribution Mr. Moseley was entitled to from Dr. Moore pursuant to § 431.150 remained unchanged by the settlement and release. As a result, he was not entitled to any benefit from the settlement.

For the reasons stated, the trial court did not err in failing to reduce the judgment against Mr. Moseley by the amount of the settlement. Point II is denied.

The judgment of the trial court is affirmed.

All concur.

---

**2.** On appeal, Mr. Moseley does not challenge the trial court's finding that the assets of the Moseley Group were stripped or the corporation was undercapitalized.